Jones, Chief Judge,
delivered the opinion of the court:
The single question at issue is whether plaintiff is entitled to the territorial cost-of-living allowance while in travel and in an annual leave status.
The essential facts of the case as disclosed by the pleadings and briefs of the litigants are clear. In brief, they are as follows: Plaintiff during all of the period involved here was employed as a special agent in the Internal Revenue Service. He reported for duty in Honolulu, Hawaii, in October 1945. During his stay in that area he received a territorial cost-of-living allowance in addition to his basic pay.
At sometime prior to June 1, 1953, plaintiff received orders transferring him to duty at Chicago, Illinois. The work in the new assignment was to become effective August 2, 1953. Plaintiff was authorized to take annual leave from June 17 to July 31,1953. He sailed from Honolulu on June *517 1, arrived at San Francisco, California, on June 6, and was in a travel status on per diem on the mainland from June 6 to J une 17,1953. He was on annual leave status from June 17 to August 2,1953.
Plaintiff was paid a territorial cost-of-living allowance during the period June 2 to August 1, 1953. This amount was repaid under protest. The plaintiff filed a claim with the General Accounting Office, which was rejected. He sues for the territorial cost-of-living allowance from June 2 to August 1, 1953.
The question before the court, therefore, is whether a Government employee is entitled to additional compensation during the time he was on travel status back to the continental United States and during the annual leave period spent in the United States prior to his commencing work on his continental assignment beginning August 2, 1953.
The plaintiff asserts that since his leave period grew out of his territorial service he should be given the additional allowance. The defendant claims that the allowance was only for time actually spent in an area where the cost of living was greater than in the continental United States.
Section 207 of Title II of the Independent Offices Appropriation Act of 1949, as amended, 62 Stat. 176,194, provides for the payment under regulations prescribed by.the President of an additional allowance not to exceed 25 percent above the rate paid for similar services in the continental United States.
Under a supplemental appropriation act at the same session of Congress (62 Stat. 1196, 1205), section 104 changed the wording of section 207 so as to provide for the payment to persons stationed outside the continental United States an additional compensation
based on living costs substantially higher than in the District of Columbia, or conditions of environment which differ substantially from conditions of environment in the States * * *.
Section 104 stipulates that such additional compensation
shall be paid only in accordance with regulations prescribed by the President establishing rates of such additional compensation * * *.
*518 Executive Order No. 10000, dated September 16, 1948,[1] sets out the conditions and circumstances under which payment will be made for territorial services.
Section 208 (1) of such Executive Order stipulates that
Payments shall begin as of the date of arrival at the post of assignment, transfer, or detail and shall stop as of departure from the post for separation, transfer, or detail, * * *
Section 208 (8) of the same order provides that
Payment shall be made for all periods of sick leave and annual leave taken during the period covered by item (1) above and for transit time authorized for purposes of leave so taken.
Construing these two sections, the Comptroller General has ruled that where an employee leaves his territorial post, with intention to return thereto, in order to take annual leave in the continental United States, he has not made a “departure from the post for separation, transfer, or detail” within the meaning of section 208 (1) and is, therefore, entitled to the additional compensation for the period of annual leave so taken (under section 208 (3)) even though such period may be spent in the continental United States. 29 Comp. Gen. 289.
Plaintiff attempts to bring himself within this ruling, but he cannot do so since, on the admitted facts, he had no intention to return to his post when he left it on June 1, 1953, and since his departure on that date was quite clearly “for * * * transíer” within the meaning of section 208 (1). His arm nal leave was, therefore, not “taken” within the period prescribed by section 208 (1), i. e., from date of arrival to date of departure for transfer.
Furthermore, this court held in the case of Paul D. Kalv v. United States, 128 C. Cls. 207, 211, a similar case, that Executive Order No. 10000
stipulated that payments should begin as of the date of arrival at the post on assignment, and should stop as of departure from the post for separation, transfer or detail * * *.
*519 We quote from the Kalv case, supra, at page 211:
Every provision of law and every executive order which we have been able to find which bears upon this subject indicates that the reason for the differential is either the increased expense of living abroad, or the difference in environment involving physical hardship, health or extraordinarily difficult living conditions.
It is apparent that the entire reason for malting the additional allowance was for the purpose of compensating or partially compensating the employee for the extra expense actually incurred during the period of his service abroad. These expenses were not actually incurred in the instant case during the period for which recovery is sought. Their payment is, therefore, under these circumstances, not provided for either in the statute or in the authorized regulations issued pursuant thereto.
Defendant’s motion will be granted and the petition will be dismissed.
It is so ordered.
Laramore, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 5 CFR 301.1 to 301.63 (1949 Ed.).