**Ralph Ah SAM, Raymond F. Duffina, Richard J. Karasaki, Richard Y. C. Lau, and Edwin Pregill**

v.

**The UNITED STATES.**

**No. 352–79C.**

United States Court of Claims.

May 19, 1982.

---

Renton Nip, Honolulu, Hawaii, for plaintiffs. Walter G. Chuck, Honolulu, Hawaii, attorney of record. Allison H. Lynde, Honolulu, Hawaii, of counsel.

Robert G. Giertz, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and KASHIWA, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

This civilian pay case is before the court on the parties' cross-motions for summary judgment. There being no factual dispute, the court is asked to determine whether prevailing rate wage employees who were promoted to General Schedule supervisory positions before June 26, 1974, are entitled to a further increase in wages under 5 U.S.C. §§ 5333 and/or 5334 and their implementing regulations. To the extent that this question has not been reached by the recent Supreme Court decision of *United States v. Clark,* 454 U.S. ——, 102 S.Ct. 805, 70 L.Ed.2d 768 (1982), we hold that these federal employees are not entitled to a further increase in wages under either statute.

### I

The case at bar involves two totally separate federal pay systems, namely the prevailing rate wage (WS) and General Schedule (GS) systems. An understanding of the interplay between these two systems is necessary before plaintiffs' claim for increased wages can be reviewed. The GS system, governed by 5 U.S.C. § 5331 *et seq.,* is a nationwide pay system divided into numbered grades and applicable to federal "white collar" employees. *See United States v. Clark, supra.* The numbered grades are further divided into "steps" up which the employee travels with longevity on the job. 5 U.S.C. § 5332. "The salary for each step of each grade in the GS is uniform nationwide." *United States v. Clark, supra.*

On the other hand, pay rates for comparable work under the WS system may vary nationwide. This is so because the WS, which applies generally to "blue collar" employees, provides that employees are to be paid at the *local* prevailing rate for comparable work. 5 U.S.C. § 5343. As prices in different geographic areas vary, so, too, do pay rates for comparable work. In some areas, the prevailing rate is so high that WS employees may earn more than the GS employees who supervise them, creating what is known as a "pay inversion."

In Title 5, Congress took steps to lessen the impact of "pay inversion" on GS employees. Section 5334, which applies to the initial setting of pay for GS employees whose positions have been changed in some manner, specifies the appropriate methods for calculation of the new wage rates. Section 5334 applies to all GS employees regardless of whether they serve in a supervisory capacity. Subsection 5334(a), through its implementing regulations, authorizes

calculation of wages in accordance with the "highest previous rate" rule.[1]

Section 5334 applies to all GS employees, but subsection 5333(b) *only* applies to GS employees who occupy some supervisory role over WS subordinates. Subsection 5333(b) provides further salary relief for some GS supervisors whose WS subordinates receive higher wages than they do.[2] Thus, if the reader has followed us so far, a former WS employee promoted to a GS supervisory position over his previous posi-

1. Subsection 5334(a) states, in part:
"(a) The rate of basic pay to which an employee is entitled is governed by regulations prescribed by the Civil Service Commission [now the Office of Personnel Management] in conformity with this subchapter and chapter 51 of this title when—
"(1) he is transferred from a position in the legislative, judicial, or executive branch to which this subchapter does not apply;

\* \* \* \* \* \*

"(6) his employment status is otherwise changed; or
"(7) his position is changed from one grade to another grade."
Congress, in enacting § 5334(a), directed the Civil Service Commission (CSC) to adopt regulations governing the establishment of initial pay rates for GS employees. In compliance therewith, CSC adopted 5 C.F.R. § 531.203(c) (1974) which states:
"(c) *Position or appointment changes.* Subject to §§ 531.204, 531.515, 539.201 of this chapter, and section 5334(a) of title 5, United States Code, when an employee is reemployed, transferred, reassigned, promoted, or demoted, the agency may pay him at any rate of his grade which does not exceed his highest previous rate; however, if his highest previous rate falls between two rates of his grade, the agency may pay him at the higher rate." \* \* \*

2. Subsection 5333(b) states:
"(b) Under regulations prescribed by the Civil Service Commission [now Office of Personnel Management], an employee in a position to which this subchapter applies, who regularly has responsibility for supervision (including supervision over the technical aspects of the work concerned) over employees whose pay is fixed and adjusted from time to time by wage boards or similar administrative authority as nearly as is consistent with the public interest in accordance with prevailing rates, may be paid at one of the rates for his grade which is above the highest rate of basic pay being paid to any such prevailing-rate employee regularly supervised, or at the maximum rate for his grade, as provided by the regulations."
As it did with § 5334(a), Congress directed the CSC to enact implementing regulations. In accordance therefore, CSC promulgated 5 C.F.R. §§ 531.303--531.305 (1974), pertinent portions of which state:
"§ 531.303 Use of authority.
In determining whether to use the authority under section 5333(b) of title 5, United States Code, and this subpart, an agency shall consider (a) the relative rate-ranges of the supervisor and the wage board employee supervised by him as well as the specific rate either is receiving at the time, and (b) the equities among supervisors in the same organizational entity as well as the equities between the supervisor and the wage board employee supervised by him.
"§ 531.304 Requirements for entitlement.
(a) *Basic.* Before an agency may adjust the pay of a supervisor under section 5333(b) of title 5, United States Code, and this subpart, it must find that (1) the supervisor regularly has responsibility for supervision (which must include supervision over the technical aspects of the work concerned) over one or more wage board employees, and (2) the rate of basic pay for the supervisor is less than the rate of basic pay for the wage board employee supervised by him.

\* \* \* \* \* \*

(d) *Rate of basic pay.* (1) In comparing the rate of basic pay for a supervisor with the rate of basic pay for a wage board employee supervised by him, an agency shall exclude from the wage board employee's rate (i) any irregular prevailing rate, such as a retained rate not related to his current position, and (ii) night differential.

\* \* \* \* \* \*

"§ 531.305 Adjustment of rates.
(a) *Rate payable to supervisor.* (1) Except as provided in subparagraph (2) of this paragraph, when an agency decides to adjust the rate of pay for a supervisor under section 5333(b) of title 5, United States Code, and this subpart, it shall adjust his rate of pay to the nearest rate (but not above the maximum rate) of his grade which exceeds the highest rate of basic pay (excluding night differential) paid to any wage board employee for whom the supervisor regularly has responsibility for supervision.
(2) When a supervisor is in an area in which he receives a cost-of-living allowance or post differential based on hardship, and the wage board employee he supervises does not receive a separately stated cost-of-living allowance or post differential, the agency shall add to the supervisor's rate of basic pay his cost-of-living allowance or post differential and use the total to adjust his rate of pay under subparagraph (1) of this paragraph."

\* \* \* \* \* \*

tion, as here, has two sets of entitlements by statute: to maintenance of his basic pay at his highest previous rate (section 5334(a) and regulations) and also to basic pay above his new subordinate's pay (section 5333(b)).

In addition to the relief afforded under §§ 5333 and 5334, all GS employees, who are employed in certain areas outside the continental United States, are entitled to receive cost-of-living allowances (COLA) on top of their regular salaries. 5 U.S.C. § 5941. WS employees are not, as their prevailing wage is based on the cost-of-living.

The instant case requires a determination of the proper treatment of COLA in relation to the calculations made under §§ 5333 and 5334. Briefly stated, before June 26, 1974, the impact of COLA was considered by the Navy in all comparisons made under §§ 5333(b) and 5334(a). After June 26, 1974, COLA was excluded from comparisons made under § 5334(a) but maintained for those comparisons performed under § 5333(b). This distinction is critical and its importance will become evident in parts II and III.

Plaintiffs, in this case, are or were civilian employees at the Pearl Harbor Naval Shipyard in Hawaii. Plaintiffs were either promoted or transferred from WS positions to GS supervisory positions. Plaintiffs were, therefore, entitled to salary relief under 5 U.S.C. § 5334 solely by virtue of their transfer into the GS system. Because they were appointed to GS supervisory positions, plaintiffs were also entitled to have their pay adjusted in accordance with 5 U.S.C. § 5333(b). Furthermore, GS employees in Hawaii receive COLA in accordance with 5 U.S.C. § 5941. When the promotions and/or transfers occurred before June 26, 1974, the Navy, in complying with its then current interpretation of both the pertinent statutes and regulations, took COLA into account in deciding whether plaintiffs were entitled to an increase in pay. The net effect of the Navy's actions was to award plaintiffs a lower salary than they would have otherwise received after June 26, 1974, when COLA was not taken into account.

Plaintiffs expressed their dissatisfaction with the pre-June 26, 1974 interpretation and application of the pertinent statutes and regulations to Naval authorities. Plaintiffs also filed a group grievance with the Civil Service Commission (CSC) and sought the aid of their elected representatives to Congress. Plaintiffs' efforts came to naught and, on May 25, 1979, plaintiffs filed suit in the United States District Court for the District of Hawaii. Upon plaintiffs' motion to transfer the suit to the Court of Claims with respect to five of the eight plaintiffs and defendant's concurrence therewith, this case was transferred to this court on August 1, 1979, pursuant to 28 U.S.C. § 1406(c).

Plaintiffs filed their petition in this court on September 25, 1979, alleging that defendant's inclusion of COLA in the calculation violated 5 U.S.C. §§ 5333(b) and 5334(a) and had deprived plaintiffs of their constitutional right to equal protection of the law. The parties moved for summary judgment and oral argument was heard on January 13, 1981. By this time, plaintiffs' claims had expanded to include an alleged violation of 5 U.S.C. § 5334(b),[3] an issue, if resolved in plaintiffs' favor, could conceivably have rendered plaintiffs' other claims moot. This court had recently addressed this same issue in *Clark v. United States*, 220 Ct.Cl. 278, 599 F.2d 411 (1979), and had held that "the two-step increase" rule of § 5334(b) applied to all WS employees transferring to GS positions. On notice that the Supreme Court had granted certiorari to hear argument in *United States v. Clark*, we stayed our decision in the present case pending the Supreme Court's decision. On January 12, 1982, the Supreme Court reversed our decision in *Clark* and held that "the statute [§ 5334(b)] and the accompa-

---

**3.** Subsection 5334(b) provides in pertinent part:

"(b) An employee who is promoted or transferred to a position in a higher grade is entitled to basic pay at the lowest rate of the higher grade which exceeds his existing rate of basic pay by not less than two-step increases of the grade from which he is promoted or transferred." * * *

nying regulations reveal a congressional intent to apply the two-step increase provision of § 5334(b) only to promotions or transfers of employees already within the GS system." 454 U.S. at ——, 102 S.Ct. at 809–10. Accordingly, plaintiffs' claim for relief under 5 U.S.C. § 5334(b) must be denied. Plaintiffs' other claims must now be addressed.

## II

At the outset, it must be noted that plaintiffs' claims for relief under 5 U.S.C. §§ 5333(b) and 5334(a) are not alternative grounds for recovery but are, in fact, separate and distinct legal entitlements for which plaintiffs could recover under either, all, or none of these theories. Accordingly, claims under §§ 5333(b) and 5334(a) will be dealt with separately. For the following reasons, we determine that plaintiffs are not entitled to recover under either § 5333(b) or 5334(a).

In applying the highest previous rate rule of 5 U.S.C. § 5334(a) and its implementing regulation, 5 C.F.R. § 531.203(c),[4] the Navy initially compared the employee's highest previous rate earned in the WS system with the rate established for the GS position, plus the COLA to which that employee would be entitled. If the employee's highest previous rate exceeded the total of the GS salary plus COLA, the Navy would then raise the employee's rate of basic pay to a corresponding step at which level the GS salary plus COLA would exceed the employee's highest previous rate. At no time, however, did the Navy raise the employee's rate of basic pay to a level that would place him in a higher grade. After June 26, 1974, the Navy changed its interpretation of 5 C.F.R. § 531.203(c) and excluded the impact of COLA from its comparison. It is important to note that the Navy did not amend § 531.203(c), as of course it could not, but merely changed its interpretation of the pertinent section. This change in interpretation had the net effect of awarding higher overall wages to those WS employees who were promoted to GS positions after June 26, 1974.

The following example graphically portrays the effect of the Navy's change in interpretation:

| | |
|---|---|
| $ 9.47 | GS basic pay rate |
| 1.42 | COLA |
| $10.89 | TOTAL |
| $ 9.94 | Highest previous rate earned under WS. |

Under the pre-June 26, 1974 interpretation, the GS employee would not be entitled to a higher starting pay rate because his or her GS basic pay plus COLA exceeded the employee's highest previous rate received under WS. After June 26, 1974, the Navy excluded COLA from the comparison under 5 U.S.C. § 5334(a). Referring to our example, the GS basic pay rate was less than the employee's highest previous rate under WS; an upward adjustment in basic pay would then be appropriate.

In their submissions to this court, neither party has devoted much attention to arguments involving 5 U.S.C. § 5334(a). Both parties have, instead, argued that 5 U.S.C. § 5333(b) is the controlling statute and have addressed § 5334(a) as a peripheral matter. The court finds the lack of discussion concerning § 5334(a) to be curious considering the Navy's change in interpretation *only* involved the setting of pay rates under § 5334(a). The court, therefore, believes that a thorough discussion of § 5334(a) is essential to a final decision in this case.

Plaintiffs argue that the Navy's pre-June 26, 1974 interpretation violates both the plain meaning of § 5334 and its implementing regulations. Plaintiffs also contend that the Navy's pre-June 26, 1974 interpretation contradicts congressional intent in enacting § 5334(a). Finally, plaintiffs argue that the pre-June 26, 1974 interpretation violates plaintiffs' constitutional right to equal protection as guaranteed by the fifth amendment. Plaintiffs' constitutional argument is based upon the difference in treatment that occurred with respect to those WS employees promoted to GS posi-

4. *Supra* note 1.

tions before June 26, 1974, such as plaintiffs, and those similarly situated employees promoted after June 26, 1974. Plaintiffs also add that they have been treated differently from those WS employees who were employed in non-COLA areas and promoted to GS positions. Plaintiffs state that the difference in treatment is evident not only in salaries, but also in retirement benefits and insurance.

Defendant argues that the Navy's change in interpretation should be applied only prospectively, citing *Fairchild Engine and Airplane Corp. v. United States*, 152 Ct.Cl. 352, 285 F.2d 131 (1961); *A. J. Myers v. United States*, 180 Ct.Cl. 521, 378 F.2d 696 (1967). Defendant further argues that because CSC had impliedly ruled that the Navy's pre-June 26, 1974 interpretation of 5 C.F.R. § 531.203(c) was accurate, the change in interpretation should not be given retroactive effect.

In subsection 5334(a), Congress gave broad authority to the CSC to prescribe regulations governing the appropriate rate of basic pay to which a GS employee would be entitled upon his or her promotion or transfer. In accordance with Congress' directive, the CSC promulgated the "highest previous rate" rule of 5 C.F.R. § 531.203(c). Neither the statute nor the regulation refer to the matter at issue here, whether COLA is to be included in the calculation performed under 5 C.F.R. § 531.203(c). It is solely the Navy's pre-June 26, 1974 interpretation which would include COLA in the calculation.

■ Great weight is to be given to an agency's interpretation of a regulation even though the agency conclusion is not the only reasonable one or even one the court would have reached if the question had arisen in the first instance in judicial proceedings. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Nabisco, Inc. v. United States*, 220 Ct.Cl. 332, 340, 599 F.2d 415, 419 (1979); *Saracena v. United States*, 206 Ct.Cl. 90, 95, 508 F.2d 1333, 1336 (1975); *Port Authority of Saint Paul v. United States*, 193 Ct.Cl. 108, 120, 432 F.2d 455, 461 (1970).

In *Udall v. Tallman*, the Supreme Court went on further to say:

Since this [case] involves an interpretation of an administrative regulation a court must necessarily look to the administrative consideration of the regulation if the meaning of the words used is in doubt. * * * [T]he ultimate criterion is the administrative interpretation which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. [380 U.S. at 16–17, 85 S.Ct. at 801 (citing *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).]

■ In the instant case, the Navy's interpretation of the regulation to include COLA in the calculation performed under 5 C.F.R. § 531.203(c) is clearly neither erroneous nor in conflict with the regulation or statute. The statute, § 5334(a), refers to the setting of initial rate of basic pay. "Rate of basic pay," a technical term, is defined, by regulation, as "the rate of pay fixed by law or administrative action for the position held by an employee before any deductions and exclusive of additional pay of any kind." 5 C.F.R. § 531.202(i). By definition "rate of basic pay" excludes COLA, as COLA is defined as an allowance under 5 C.F.R. § 591.201(e). By referring to "rate of basic pay" in § 5334(a), Congress obviously intended to use the term to establish wages in accordance with the GS rates set by statute. Nothing, however, in § 5334(a), and this is where plaintiffs' theory fails, dictates that COLA cannot be used to compute or establish the rate of basic pay to which a GS employee would be entitled.

Similarly, § 5334(a)'s implementing regulation, 5 C.F.R. § 531.203(c), does not prohibit COLA from consideration. Section 531.203(c) refers to pay at rate of grade. While rate of grade is not defined, it can be safely assumed to mean a range of pay rates that correspond to a GS grade. The regulation, however, speaks to establishment of a pay rate and not to whether COLA is to be included or excluded in performing the mechanics of the comparison. Because neither the statute nor the regula-

tion prohibits or requires the inclusion of COLA in setting the GS employee's rate of basic pay, the agency's interpretation prevails.

Further support for the reasonableness of the Navy's pre-June 26, 1974 interpretation can be found when one considers what pay rates are being compared. WS pay rates are based upon the prevailing rate in a specific geographic area. By operation, WS pay rates necessarily include a cost-of-living allowance. GS basic pay rates do not include COLA. Therefore, by adding COLA to the GS pay rates and then comparing the total to the WS pay rate, the Navy is comparing equivalents.

Nor does the Navy's pre-June 26, 1974 interpretation violate the guiding principle of "equal pay for substantially equal work" as stated in 5 U.S.C. § 5301. The Navy's pre-June 26, 1974 interpretation supplements the mandates of 5 U.S.C. § 5334(a) and 5 C.F.R. § 531.203(c) which merely provide that an employee transferred or promoted to one GS system will earn an equivalent or increased salary. If the GS position requires a greater degree or amount of work, this fact will then be reflected in the GS grade and rate of pay assigned to that position. If the position requires only equal work, the GS grade and rate of pay assigned to that position will reflect this fact. The Navy's pre-June 26, 1974 interpretation does not affect the assignment of grade and rate of pay to a position. It merely provides the means of ensuring that an employee will not be harmed in transferring from the WS pay scale to the GS pay scale.

Plaintiffs argue that because the Navy has effectively recognized the alleged error of its ways and corrected its interpretation of 5 U.S.C. § 5334(a), the new interpretation should be given retroactive effect and applied to them. Defendant counters that the general rule that statutes are to be given prospective application unless otherwise stated should be analogized to the instant case. While we refuse to go as far as defendant would have us do, we agree that the post-June 26, 1974 interpretation should not be given retroactive effect. Further-

more, we express no opinion as to the validity of the Navy's post-June 26, 1974 interpretation.

■ What the post-June 26, 1974 interpretation effectively did was to overrule the Navy's earlier interpretation. This fact is of utmost importance in determining retroactive application of regulations and agency interpretations of them. *See Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 981–84 (5th Cir. 1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978). Ordinarily, if a new regulation or interpretation merely recites settled prior law or policy, then retroactive application of the regulation or interpretation is proper. If, however, the new regulation or interpretation overrules prior law or policy, the new regulation or interpretation will not, depending on various factors, be given retroactive effect. This distinction is obviously grounded upon notions of fairness to the involved parties.

■ In the instant case, the Navy's post-June 26, 1974 interpretation did not recite settled prior law or policy. It effectively overruled prior policy. Thus, it should not be given retroactive effect. If the new interpretation would somehow have caused injury to plaintiffs if applied retroactively, plaintiffs would have undoubtedly argued against retroactive application. Merely because the new interpretation would benefit plaintiffs should not, in itself, supply the grounds for retroactive application.

### III

Now we turn to subsection 5333(b) and its implementing regulations which are expressly limited to GS supervisors whose WS subordinates earn more than they do. Because plaintiffs were promoted to GS positions supervising WS subordinates, subsection 5333(b) applies to them.

In applying § 5333(b) and its implementing regulations, the Navy has consistently compared the rate of pay received by the highest paid subordinate with the *total* remuneration received by the GS supervisor, *i.e.,* basic pay plus COLA. No change in

interpretation with respect to § 5333(b) and its implementing regulations occurred on June 26, 1974. Throughout the relevant time period, the Navy's manner of performing the comparison has not wavered. The Navy's change in interpretation with respect to § 5334(a) has, of course, had an impact on the supervisor's rate of basic pay even without a change under § 5333(b). Because the supervisor's pay rate is now theoretically set at a higher rate initially under § 5334(a) than before, the supervisor may now receive a higher pay rate (assuming his highest paid subordinate earns more than he) than plaintiffs who were promoted to supervisory positions before June 26, 1974.

The following table depicts the effect the Navy's change in interpretation with respect § 5334(a) has on § 5333(b):

Pre-June 26, 1974—

Calculations under § 5334(a):

| | |
|---|---|
| $ 9.47 | GS basic pay rate |
| 1.42 | COLA |
| $10.89 | TOTAL |
| $ 9.94 | Highest previous rate earned under WS. |

Because the total of GS basic pay rate plus COLA exceeds the employee's highest previous rate, no adjustment is needed. A comparison of this pay rate with that of the highest paid subordinate must now be performed under § 5333(b).

| | |
|---|---|
| $10.89 | GS basic pay rate + COLA |
| 10.50 | Highest subordinate pay rate under GS. |

Because the highest subordinate earns less than the GS supervisor, no adjustment in pay will be made.

Post-June 26, 1974—

Calculations under § 5334(a):

| | |
|---|---|
| $9.47 | GS basic pay rate |
| 9.94 | Highest previous rate earned under WS. |

Adjustment made to GS basic pay rate to $10.00.

5. COLA is calculated as a percentage of the basic pay. For our purposes, though, it will remain a fixed figure.

Because the GS employee's basic pay was less than the highest previous rate earned under the WS system, an adjustment was required. Assume for illustrative purposes that $10.00 was the next highest GS rate of pay. A comparison of this pay rate with that of the highest paid subordinate must now be performed under § 5333(b).

| | |
|---|---|
| $10.00 | GS basic pay rate |
| 1.42 | COLA [5] |
| $11.42 | TOTAL |
| $10.50 | Highest subordinate pay rate under WS. |

Because the highest paid subordinate earns less than the GS supervisor, no adjustment will be made. The GS supervisor who is promoted after June 26, 1974, will, however, be paid more due to the impact on § 5333(b) of the change in interpretation of § 5334(a).

Understandably, plaintiffs complain of unfairness. Their legal arguments with respect to § 5333(b) are, however, without merit. Basically, plaintiffs argue that the Navy's inclusion of COLA in the comparison violates the plain meaning of § 5333(b) and its implementing regulations.

Plaintiffs argue that under § 5333(b) and its implementing regulations, a GS supervisor's basic pay rate should be compared to the pay rate of his highest subordinate. If the GS pay rate is below that of his subordinates, a pay adjustment is required. *See* 5 C.F.R. § 531.305(d).[6] To compute the adjustment, plaintiffs would add the cost of COLA to the supervisor's rate of basic pay. The total remuneration would then be keyed to the nearest GS pay rate, which would then become the new basic pay rate for the supervisor. The supervisor then would be entitled to COLA on the basis of his new basic pay rate. *See* 5 C.F.R. § 531.305(a)(2).[7] Plaintiffs argue that their theory is the only plausible interpretation of the regulations and statutes read as a whole.

6. *Supra* note 2.

7. *Supra* note 2.

Under plaintiffs' theory, the calculation would be performed in the following manner:

1. Assume basic pay set at $10.00 under § 5334(a).

2. Comparison of GS basic pay with pay rate of highest paid subordinate:

| | |
|---|---|
| $10.00 | GS basic pay rate |
| $10.50 | WS pay rate |

3. Because GS pay rate below that of WS subordinate, an adjustment is required.

4. Adjustment is performed by adding COLA to basic pay rate:

| | |
|---|---|
| $10.00 | GS basic pay rate |
| 1.42 | COLA |
| $11.42 | TOTAL |

The total is then keyed to the nearest pay rate.

5. Assume nearest pay rate is $11.50. $11.50 would then become the new basic pay rate to which COLA would then be added:

| | |
|---|---|
| $11.50 | New GS basic pay rate |
| 1.42 | COLA |
| $12.92 | TOTAL |

6. New total pay rate would be $12.92.

While it is true that some of the language used in the regulations, particularly language referring to rate of basic pay, would appear to support plaintiffs' theory, we believe plaintiffs' approach is a narrow one. It must be remembered that 5 C.F.R. § 531.305(a)(2) was a subsequent addition to the regulations. Before § 531.305(a)(2) was added in 1967, the regulations did not refer to whether COLA was to be used in computing any adjustment to a supervisor's salary. The regulations merely contemplated adjustments to supervisor's salaries in those areas where GS personnel did not receive COLA. In 1967, provision was made, by way of § 531.305(a)(2), to include the cost of COLA in those areas where GS employees received the allowance. Hence,

the language of the regulations must be read in this light.

In addition, it should be noted that 5 C.F.R. § 531.303 [8] refers to the equities of the situation between supervisors and wage board subordinates. The equities are not met if a comparison of only GS basic pay rates with wage board salaries is performed. Wage board salaries inherently reflect a cost-of-living allowance. Equivalents must be compared and to do so, COLA must be added to the basic GS salary.

Equities would also not be met if plaintiffs' theory was to be adopted. Under plaintiffs' theory, the cost of COLA is included in the calculation twice. No authority exists in either the regulations or the statute for this proposition.

Finally, CSC, the agency responsible for drafting 5 C.F.R. §§ 531.304, 531.305, approved the Navy's interpretation of these same regulations. As we have said before, an agency's interpretation of its own regulations is to be given great weight unless the questioned interpretation is clearly erroneous or inconsistent with the regulation or statute. *Udall v. Tallman, supra; Nabisco, Inc. v. United States, supra; Saracena v. United States, supra; Port Authority of Saint Paul v. United States, supra.* In light of the Navy's consistent interpretation of § 5333(b) and its implementing regulations, with CSC approval, the inclusion of COLA in the comparison performed under 5 C.F.R. § 531.305(a)(2) is clearly neither erroneous nor inconsistent.

IV

Plaintiffs also challenge the Navy's pre- and post-June 26, 1974 interpretations in that different classes of similarly situated persons were treated differently as violative of the fifth amendment's guarantee of equal protection. Defendant argues that this court lacks jurisdiction to hear claims based upon the equal protection clause of the fifth amendment because this constitutional provision does not obligate the Federal Government to pay money damages, cit-

8. *Supra* note 2.

ing *Carruth v. United States*, 224 Ct.Cl. 422, 627 F.2d 1068, 1081 (1980). Defendant further argues that even if this court has jurisdiction over plaintiffs' constitutional claim, plaintiffs' claimed constitutional violation does not survive constitutional analysis.

This court does have jurisdiction to hear plaintiffs' equal protection claim. Plaintiffs' claim for money damages is based upon 5 U.S.C. §§ 5333(b) and 5334(a). Plaintiffs' equal protection challenge is based upon the Navy's interpretation of these statutes. Or put another way, plaintiffs' claim that the subject statutes, if correctly construed according to the fifth amendment, require this court to award money damages. This is precisely the type of claim over which this court has jurisdiction. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Gentry v. United States*, 212 Ct.Cl. 1, 7, 546 F.2d 343, 346 (1976).

Plaintiffs' equal protection claim is based upon two situations in which similarly situated persons are being treated differently. The first situation involves the different treatment afforded to those WS employees promoted to GS supervisory positions prior to June 26, 1974, and those similarly situated persons promoted after June 26, 1974. Plaintiffs are, obviously, members of the former class. Plaintiffs also argue that WS employees promoted to GS supervisory positions prior to June 26, 1974, in COLA areas are being treated differently than similarly situated persons employed in non-COLA areas. Plaintiffs argue that these two situations in which different treatment is afforded to the classes violates equal protection guarantees.

With regard to plaintiffs' first attempt to invoke the protection of the equal protection clause, plaintiffs have failed to articulate a constitutional argument. Plaintiffs claim that by changing its interpretation of the pertinent statute and regulations, the Navy has treated similarly situated persons differently, *i.e.*, persons promoted before and after June 26, 1974. Plaintiffs have not cited this court to any case in which any changes in interpretation or amendment of statutes or regulations gives rise to an equal protection challenge. Under plaintiffs' theory, any change, such as amendments to the minimum wage laws or amendments effecting decreases or increases in government entitlement benefits, would be subject to an equal protection challenge. This result is clearly absurd and would, if given support, effectively inhibit any legislative or other governmental body from amending its statutes or regulations. Our laws would become written in stone, thereby failing to account for changing times and changing demands of our citizens.

Plaintiffs' second equal protection claim is based upon the different treatment afforded two classes of similarly situated persons. One class is comprised of persons, such as plaintiffs, who were promoted to GS supervisory positions and had COLA included in the calculations made under 5 U.S.C. §§ 5333(b) and 5334(a). The other class includes those persons promoted to GS supervisory positions who, because they lived in non-COLA areas, did not have COLA included in the calculations. When a class is neither suspect nor semi-suspect or the right allegedly infringed upon is neither fundamental nor quasi-fundamental, a "minimum rationality standard is appropriate." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976); *See McDonald v. Board of Election*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Persons promoted to GS supervisory positions in COLA areas do not constitute a suspect or semi-suspect class. Nor is the right to employment and wages a fundamental or quasi-fundamental right. *See Massachusetts Board of Retirement, supra*, 427 U.S. at 313, 96 S.Ct. at 2566–67. Thus, the minimum rationality test is the appropriate one to apply in this case. Under minimum rationality "[i]f the classification

has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citing from *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

Under this standard, it is clear that the inclusion of COLA, where applicable, under 5 U.S.C. §§ 5333(b) and 5334(a) is reasonable and, hence, constitutionally valid. Cost-of-living allowances are designed to offset the expense incurred by GS employees in living and working in high cost areas. WS pay rates, by their nature, reflect the cost-of-living. The Navy's inclusion of COLA in the calculation was reasonably designed to compare equivalents. Given the policy pronouncements of 5 C.F.R. § 531.303, this purpose is both reasonable and rational.

Moreover, in non-COLA areas, GS employees receive only their basic pay rate, while WS employees receive the prevailing rate. If an adjustment to a GS employee's salary is made under either 5 U.S.C. §§ 5333(b) or 5334(a), a comparison will be made of GS pay rates and WS pay rates. Because the cost-of-living is presumed to be significantly less in non-COLA areas, WS pay rates will reflect this fact and will be commensurately lower than their counterparts in COLA areas. Because of this fact, it is conceivable that plaintiffs would, despite the alleged injury suffered, receive higher wages than their counterparts in non-COLA areas, adequate to reflect the difference in cost-of-living.

## V

For all of the above reasons, plaintiffs' motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and plaintiffs' petition is dismissed.

KASHIWA, Judge, dissenting:

I respectfully dissent from the majority's decision.

The basic issue herein is whether the cost of living allowance (COLA) paid to federal workers in Hawaii must be considered as a "rate of basic pay" for purposes of other adjustments to General Schedule (GS) pay allowed by 5 U.S.C. § 5334(a) or 5 U.S.C. § 5333(b). Under 5 U.S.C. § 5334(a), an employee transferred to the GS pay system from the prevailing rate wage system (WS) may have his initial GS salary adjusted upwards if his "rate of basic pay" would not otherwise exceed his former WS wages. Under 5 U.S.C. § 5333(b), a GS supervisor's salary may be adjusted if the supervisor's "rate of basic pay" does not exceed the wages of the WS employees he supervises.

"Rate of basic pay" is defined as follows for purposes of both statutes:

* * * "Rate of basic pay" means the rate of pay fixed by law or administrative action for the position held by an employee before any deductions and *exclusive of additional pay of any kind.* [5 C.F.R. § 531.202(i) (1974) (defining the phrase for 5 U.S.C. § 5334(a) purposes); emphasis supplied.]

*Accord*: 5 C.F.R. § 531.302(b) (defining the phrase for 5 U.S.C. § 5333(b) purposes). The rate of basic pay of plaintiff GS supervisors, as "fixed by law," is found in 5 U.S.C. § 5332, which is entitled "The General Schedule" and fixes by law the rate of basic pay of *all* GS employees. COLA is not included in the basic rate of pay "fixed" by 5 U.S.C. § 5332 and would therefore be a "kind" of "additional pay," not to be taken into account for either statutory adjustment. This conclusion seemingly is obvious, but there are several additional reasons why COLA is not a part of a GS employee's "rate of basic pay."

First, all GS employees in the 48 contiguous states, none of whom receives COLA, have basic rates of pay set by 5 U.S.C. § 5332. It is absurd to argue that plaintiffs somehow have a different rate of basic pay than all these other GS employees, for plaintiffs' compensation is governed by the same basic pay statute as all other GS employees.

Second, COLA is not and was never intended to be basic pay. The very nomenclature, "allowance," belies the argument that COLA is basic pay. Under 5 U.S.C. § 5941, COLA is clearly an allowance in *addition* to rates of basic pay fixed by statute:

SUBCHAPTER IV.—MISCELLANEOUS ALLOWANCES

§ 5941. *Allowances based on living costs and conditions of environment; employees stationed outside continental United States or in Alaska.*

(a) Appropriations or funds available to an Executive agency, except a Government controlled corporation, for pay of employees stationed outside the continental United States or in Alaska whose *rates of basic pay* are fixed by statute, are available for allowances to these employees. The allowance is based on—

(1) living costs substantially higher than in the District of Columbia;

(2) conditions of environment which differ substantially from conditions of environment in the continental United States and warrant an allowance as a recruitment incentive; or

(3) both of these factors.

The allowance may not exceed 25 percent of the *rate of basic pay.* Except as otherwise specifically authorized by statute, the allowance is paid only in accordance with regulations prescribed by the President establishing the rates and defining the area, groups of positions, and classes of employees to which each rate applies. [Emphasis supplied.]

Although ignored by the majority, the case law interpreting 5 U.S.C. § 5941 and predecessor provisions has long recognized COLA as an allowance *additional to* the GS rate of basic pay. *E.g., Shadduck v. United States,* 142 Ct.Cl. 516, 517 (1958); *Kalv v. United States,* 128 Ct.Cl. 207, 124 F.Supp. 654 *passim* (1954); *Curlott v. Campbell,* 598 F.2d 1175, 1177 (9th Cir. 1979), *modifying Curlott v. Hampton,* 438 F.Supp. 505 (D.Alas.1977).

Third, the COLA percentage can be adjusted up or down based on regulations prescribed by the President with respect to living costs substantially higher than those in the District of Columbia and as a recruitment incentive allowance. By its very nature, then, COLA is geared to factors which have nothing to do with basic compensation for work performed, duties, and qualifications.

Fourth, the Federal Personnel Manual (FPM) long has *specifically excluded* COLA from the definition of "rate of basic pay." *E.g.,* FPM 591(1) (1963); FPM 591(1)a(9) (1969) (currently in effect). Moreover, the FPM long has *specifically directed* that COLA is not to be included in the base used to determine "any additional pay." *E.g.,* FPM 591(4–1)d(1) (1963); FPM 591(4–1)d(1) (1969) (currently in effect).

Fifth, COLA received by Hawaii federal employees is subject to fundamentally different federal income tax treatment than is GS pay. GS compensation is fully includible as income and is thus fully *taxed;* under 26 U.S.C. (Internal Revenue Code of 1954, as amended) § 912(2), COLA paid to Hawaii federal employees is excluded from gross income and is fully *exempt from tax.* This, in my view, underscores the Congressional determination that there is a critical distinction between GS pay and COLA amounts.

Sixth, defendant itself has admitted COLA is not a part of the rate of basic pay by its reversal of policy in Civilian Manpower Management Instruction 531(S2–4)b(2), effective June 26, 1974. Under that Instruction, defendant has eliminated consideration of Hawaii COLA in determining, under 5 U.S.C. § 5334(a), the initial rate at which a GS employee who has moved from a WS position should be paid. Defendant, however, continues to maintain Hawaii COLA can be properly considered (1) in pre-June 26, 1974, initial rate calculations and (2) in portions of the comparative test under 5 U.S.C. § 5333(b) for both pre- and post-June 26, 1974, periods.

There are, of course, additional reasons for not considering COLA as part of the basic rate of pay. I have merely underscored the more obvious reasons for rejecting the continued consideration of COLA as basic pay.

The majority repeatedly asserts that only by including COLA can a GS salary truly be compared with WS compensation. For example, the majority says:

Further support for the reasonableness of the Navy's pre-June 26, 1974 interpretation can be found when one considers what pay rates are being compared. WS pay rates are based upon the prevailing rate in a specific geographic area. *By operation, WS pay rates necessarily include a cost-of-living allowance.* GS basic pay rates do not include COLA. Therefore, by adding COLA to the GS pay rates and then comparing the total to the WS pay rate, the Navy is comparing equivalents. [At p. 9, emphasis supplied.]

The majority's reasoning, obviously, assumes Hawaii COLA only reflects the higher cost of living in the Islands. But 5 U.S.C. § 5941 is clear that COLA may be based on either or both of *two* factors:

(1) higher living costs

(2) an allowance as a recruitment incentive.

We simply do not know on this record whether Hawaii COLA or WS wages paid in Hawaii reflect any added costs of recruitment. It may well be (so far as we *really* know) that a recruitment allowance is present in Hawaii COLA to attract white collar workers to Hawaii, but no such recruitment factor is reflected in WS wages paid in Hawaii because of an abundance of local blue collar workers. We simply do not know, and I therefore find no support for the majority's bald assertion that by including COLA, the Navy is comparing equivalents. Further, even if we assume Hawaii COLA reflects only the higher cost of living there, it still does not follow that by including COLA the Navy is comparing equivalents. The majority's assumption that WS employees' pay in general contains the higher cost-of-living factor is nothing more than a guess. If a WS employee's wage does contain this factor, what percent of his pay covers this factor? Is it 25 percent or 5 percent? If the coverage is only 5 percent, it is grossly erroneous to assume 5 percent is equivalent to 15 percent, the stipulated COLA rate in this case.

Moreover, I cannot agree with the majority's resolution of the substantial constitutional issues herein. In my view, defendant's COLA policies under 5 U.S.C. § 5334(a) and 5 U.S.C. § 5333(b) have irrationally created two sets or classifications of similarly situated but differently treated groups. The first such set consists of (1) those non-COLA, GS supervisors who are paid more than their subordinates and (2) those COLA, GS supervisors who are or were at times paid less than their subordinates. The second set of unequally and irrationally treated federal employees, created solely by defendant's policy and its refusal to apply the June 26, 1974, revision to plaintiffs, consists of (1) those COLA, GS supervisors who were promoted from WS to GS positions after June 26, 1974, and are therefore entitled to be paid more than their counterparts and (2) those COLA, GS supervisors who were promoted from WS to GS positions prior to June 26, 1974, and are therefore paid less than their counterparts even though they may have greater seniority. In each of the foregoing groups of supervisors, the former group is the arbitrarily favored class.

As the majority points out, the critical test is whether there was a "rational basis" for the creation of these distinctions between similarly situated groups. I perceive no need to repeat the authorities which the majority cites to establish that proposition. Applying this rational basis test to the instant case, it is clear defendant's policy of considering COLA in determining plaintiffs' rate of basic pay is unlawful. With respect to the first set of unequally treated supervisors, there is certainly no defensible rationale for defendant's penalizing COLA, GS supervisors as against non-COLA, GS supervisors. A non-COLA supervisor's base rate clearly is his rate fixed by the GS schedule. So is that of the COLA, GS supervisor. But solely because Hawaii supervisors receive COLA, they have been denied an increase of their base rate (with all the benefits incident thereto) over their subordinates under 5 U.S.C. § 5333(b), while non-COLA supervisors with exactly the same base

rates fixed by the GS schedule received these increases. The majority's argument that this distinction is rational is bottomed on the assumptions that "WS pay rates, by their nature, reflect the cost-of-living" and that "[t]he Navy's inclusion of COLA in the calculation was reasonably designed to compare equivalents." As pointed out above, neither assumption is supported by this record. Simply put, COLA and WS wages cannot be presumed equivalent and the majority's assumption therefore can provide no basis for the distinctions wherein some supervisors receive an increase in their base rate while some do not.

With respect to the second set of unequally treated COLA, GS supervisors, plaintiffs have been arbitrarily and wrongfully penalized a second time. Although COLA, GS supervisors promoted to GS from WS positions after June 26, 1974, have enjoyed significant pay increases and incidental employment benefits caused thereby, plaintiffs, who were promoted prior to June 26, 1974, have been denied equal treatment even though their circumstances are identical. Defendant concedes that the effect of not applying the June 26, 1974, reversal in policy to plaintiffs has been an anomalous and inequitable pay situation where plaintiffs are discriminated against *vis-a-vis* later-promoted supervisors and plaintiffs' subordinates. There is no rational basis for this discrimination. Defendant's reasons for arbitrarily denying the increases to plaintiffs are apparently that there are not very many plaintiffs and that they will be replaced through attrition:

> Because the problem exists for only a limited number of employees, however, and since it will exist only until the current General Schedule supervisors are replaced, through attrition and refilling of the positions, it is not considered appropriate to request the Civil Service Commission to revise [the methods for computing these employees' pay]. [Letter from the Director, Office of Civilian Manpower Management, United States Navy, to the Regional Director, Office of Civilian Manpower Management, United States Navy (December 19, 1974).]

I know of no authority which allows unconstitutional treatment merely because the impacted class is numerically small. Wisely, the majority does not justify the distinction on this basis. Instead, the majority asserts that recognition of this equal protection claim would

> * * * inhibit any legislative or other governmental body from amending its statutes or regulations. Our laws would become written in stone, thereby failing to account for changing times and changing demands of our citizens. [At p. 935.]

The point of constitutional significance, however, is not whether an agency may change its interpretation of the controlling law. Obviously, the agency may. The constitutionally relevant point is whether, in implementing that change, the agency has acted in a manner creating arbitrary and unreasonable distinctions. Put another way, an agency may act, but must always act constitutionally. I cannot say the distinction drawn in supervisors' pay solely on the basis of when each was promoted is constitutionally permissible. In conclusion, I note the Supreme Court has long recognized construction of a statute (and presumably supporting regulations) should " 'go in the direction of constitutional policy.' " *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 134, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974), *citing United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944). An agency, it seems to me, has an obligation to avoid implementing policies which raise even a colorable constitutional claim.

It follows from the foregoing that (1) the Navy improperly considered COLA in its 5 U.S.C. § 5334(a) calculations for pre-1974 periods and (2) the Navy improperly considered COLA in its 5 U.S.C. § 5333(b) calculations for all periods. I would allow the plaintiffs recovery, the amount of which would be determined under Rule 131(c). To repeat, I respectfully dissent.