MARINE AMERICAN STATE BANK OF BLOOMINGTON, ILLINOIS, A Corporation, Appellee,

v.

Richard H. LINCOLN, Defendant,

and

Audry Lincoln, Appellant,

and

H. Dean Yoder, Phyllis Yoder, McClean County Bank, A Corporation, Farmers Cooperative Company, Creston, Iowa, Defendants.

No. 87–838.

Supreme Court of Iowa.

Dec. 21, 1988.

Robert A. Rolfe, Lamoni, for appellant.

James C. Steffes, Creston, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

The Marine American State Bank of Bloomington, Illinois (bank) brought a foreclosure action upon a promissory note and real estate mortgage signed by the appellant Audry Lincoln. The trial court granted foreclosure and entered judgment against Audry for $211,482.74 plus interest less an offset of $300 for attorney fees.

On appeal Audry claims the trial court erred in entering personal judgment against her after finding the bank had violated the provisions of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 et seq. (1988). She also claims the trial court erred in not imposing more severe sanctions against the bank for failing to make timely production of documents. We affirm the trial court.

## I. *Background.*

H. Dean Yoder and Richard H. Lincoln formed the Illinois corporation of D & D Farms, Inc. D & D Farms was involved in farming and owned several farms in Illinois and Iowa. The wives of Dean and Richard were neither officers nor shareholders in D & D Farms and had no material participation in its activities. On April 25, 1981, D & D Farms obtained a loan from the bank. In addition to requiring Dean and Richard's signatures, the bank required the signatures of their wives, Audry Lincoln and Phyllis Yoder.

In 1981, Richard Lincoln sold all of his interest in D & D Farms to Yoder. Later in 1981, Yoder let the corporate charter of D & D Farms lapse. The charter was canceled by the secretary of state. On April 25, 1982, the note signed on April 25, 1981, became due. On October 27, 1982, Audry and Richard Lincoln and Dean and Phyllis Yoder signed an extension agreement on that note.

In 1983, the Yoders defaulted on the 1981 note. Richard Lincoln and Dean Yoder's liability on the note was discharged in bankruptcy. After a default judgment was secured against Phyllis Yoder, the bank proceeded to trial and secured a personal judgment against Audry.

The issues presented at trial were those arising from the affirmative defenses and counterclaims made by Audry and her husband. The trial court found the Lincolns had not established their affirmative defenses based upon release, unconscionability and wrongful withdrawal by the bank from the farming partnership. The trial court denied the Lincolns' counterclaims based upon fraudulent inducement or concealment.

The district court held their ECOA counterclaims were barred by the statute of limitations. The court recognized that Richard could maintain his ECOA action as a setoff or recoupment against the bank's judgment. It found the bank had violated certain provisions of the ECOA but found Richard had not suffered any actual damages. The court awarded Richard $5000 in punitive damages and $5000 as attorney fees as recoupment on his ECOA claim. Richard, who had proceeded into bankruptcy in 1986 and who secured a discharge of the bank debt, did not appeal. The court found Audry was not an aggrieved applicant under the provisions of ECOA and therefore held she could not maintain an action against the bank.

The court also found the bank failed to timely produce requested documents. It concluded the failure to produce was not excusable but it was unintentional. The court allowed Audry $300 as attorney fees.

On appeal, Audry challenges the trial court's rulings in regard to her counterclaim based on the ECOA. She argues that because of the trial court's finding that the bank violated the ECOA, the bank should not be able to enforce the deficiency judgment against her. Audry also argues the trial court erred in failing to impose greater sanctions against the bank for failing to timely produce documents. This case was tried in equity and our review is de novo.

## II. *ECOA Claim.*

The ECOA makes it unlawful for any creditor to discriminate on the basis of marital status. 15 U.S.C. § 1691(a)(1). The Act authorizes the Board of Governors of the Federal Reserve System (Board) to prescribe regulations to carry out the purposes of the Act. 15 U.S.C. § 1691b. The regulations promulgated by the board are codified in Regulation B at Title 12 Code of Federal Regulations parts 201.1–202.14 (1988). The ECOA creates a private cause of action for declaratory and equitable relief and for actual and punitive damage. 15 U.S.C. § 1691e.

The provisions of the ECOA are violated when a lender requires a married applicant's spouse to cosign for a loan to the applicant even though the applicant is qualified individually under the lender's standard of credit worthiness. *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1276 (9th Cir.1982). Title 12 Code of Federal Regulations part 202.7(d)(1) states in part:

> [A] creditor shall not require the signature of an applicant's spouse ... other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of credit worthiness for the amount and terms of the credit requested.

■ We, like the trial court, find that the bank violated the ECOA when it required Audry's signature on the 1981 promissory note and the October 1982 extension agreement even though the applicants were fully qualified under the bank's standard of creditworthiness. The bank did not appeal from the district court finding.

■ The ECOA provides that no action under the Act shall be brought later than two years from the date of the occurrence of the violation. 15 U.S.C. § 1691e(f). The violations of the ECOA occurred when the bank required Audry's signature on the note and extension agreement. The statute's focus is upon the time of the discriminatory actions, not the time at which the consequences of the action became painful. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, 440 (1980) (applying this limitation period under the Equal Employment Opportunity Act); *Abramson v. University of Haw.*, 594 F.2d 202, 209 (9th Cir.1979).

■ Although an affirmative action for damages under the ECOA would be barred by the two-year limitation of section 1691e(f), the debtor may assert the ECOA claim in the nature of recoupment. *In re Remington*, 19 B.R. 718, 721 (Bankr.D. Colo.1982). The trial court recognized it could assess damages for violation of the ECOA in the nature of recoupment, but held Audry was not an "aggrieved applicant" entitled to a damage award.

The ECOA prohibits a creditor from discriminating against any applicant on the basis of marital status. 15 U.S.C. § 1691. Any creditor who fails to comply with the ECOA is liable to the aggrieved applicant for actual and punitive damages. We must determine if Audry is considered an "aggrieved applicant" entitled to maintain a civil action for damages under the ECOA.

■ An applicant is defined by the ECOA as:

> [A]ny person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.

15 U.S.C. § 1691a(b). Regulations were adopted by the Board in 1974. These regulations defined an applicant as:

> Applicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may be contractually liable regarding an extension of credit *other than* a guarantor, surety, endorser, or similar party.

12 C.F.R. § 202.2(e) (1985) (emphasis added). This regulation was amended on January 1, 1986. It now provides:

> Applicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers and similar parties.

12 C.F.R. § 202.2(e) (1988).

■ The amended regulation is a substantive change in the definition of an applicant under the Act. It overrules the prior regulation so as to include, not exclude from the definition, a "guarantor, surety, endorser, or similar party." When a new or amended regulation changes existing law or regulation it will generally not be given retroactive application. *See Sam v. United States*, 682 F.2d 925, 932, 230 Ct.Cl. 596 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983); *see also Hutchison Nursing Home, Inc. v.*

*Burns,* 236 N.W.2d 312, 316 (Iowa 1975). We conclude the definition included in the amended regulation should not be given retroactive application.

Credit was extended to and upon the application of D & D Farms, Dean Yoder and Richard Lincoln. Audry did not apply for credit to the bank. We find that Audry was not an aggrieved applicant.

This result is supported by decisions from other jurisdictions. In *Morse v. Mutual Fed. Sav. & Loan Ass'n,* 536 F.Supp. 1271, 1278 (D.Mass.1982), a wife signed a note that was an extension of credit to her husband. The court determined that her signature was that of a "guarantor, surety, endorser, or similar party" under Regulation B of Title 12 Code of Federal Regulations part 202.2. The wife, therefore, was not an "aggrieved applicant" entitled to bring a private cause of action under the ECOA. *See id.* at 1278; *see also Evans v. First Fed. Sav. Bank of Ind.,* 669 F.Supp. 915, 922–23 (N.D.Ind.1987) (not-for-profit housing corporation investigating complaints of discrimination not an "applicant"). In *Delta Diversified, Inc. v. Citizens & Southern Nat. Bank,* 171 Ga.App. 625, 320 S.E.2d 767, 771 (1984), the Georgia Court of Appeals held that wives of principal shareholders and officers of a corporation who were sureties on the corporation's note were not "applicants" as defined by the ECOA. The wives were not, therefore, protected by the ECOA. *Id.,* 320 S.E.2d at 771.

### III. *Discovery Sanctions.*

The bank's foreclosure action was commenced in 1984. Richard and Audry filed a request for production of documents in 1985 and amended the request in 1986 after their answer had been amended to include a counterclaim. The first documents in response to the request were provided about one week before trial. More documents were provided during the trial. The Lincolns did not file a motion for an order to compel discovery under Iowa Rule of Civil Procedure 134(a) nor did they move for continuance because of the late filing. The trial court concluded the bank was not excused because bankruptcy stays were in place until late summer or because settlement negotiations were ongoing after the stays were lifted.

 The trial court assessed attorney fees of $300 as costs against the bank. Unless there has been an abuse of discretion, we do not reverse the court's imposition of discovery sanctions. When drastic sanctions such as dismissal or default are imposed, the court must normally find the refusal to comply was the result of willfulness, fault or bad faith. *Kendall/Hunt Publishing Co. v. Rowe,* 424 N.W.2d 235, 240–41 (Iowa 1988).

 Audry urges an appropriate sanction would be to strike the bank's claim for personal judgment against her under Iowa Rule of Civil Procedure 134(d). The relevant portion of the rule provides:

If a party ... fails ... (3) to serve a written response to a request for inspection submitted under R.C.P. 127, ... the court ... on motion may make such order in regard to the failure as is just, and among others it may take any action authorized under paragraph A, B, or C of subsection "b" (2) of this rule.

*See* Iowa R.Civ.P. 134(b)(2)(C) (court may strike pleadings or parts thereof or may dismiss the action or any part thereof). The sanctions allowed under this subsection apply when a party totally neglects to respond to a request for production. Because Audry neither filed a motion for sanctions prior to the bank's filing of its response nor secured a court order to compel production, the court has no authority to impose the requested sanctions. *See Fox v. Studebaker–Worthington, Inc.,* 516 F.2d 989, 993–96 (8th Cir.1975) (applied Federal Rule of Civil Procedure 37(e) which is substantially the same as Iowa Rule of Civil Procedure 134(d)).

We hold that Audry was not an aggrieved applicant under the ECOA and therefore is unable to maintain an action against the bank. She is not entitled to sanctions under Iowa Rule of Civil Procedure 134(d) because the bank did respond to the request for production before a motion for

sanctions was filed. We therefore affirm the trial court.

AFFIRMED.