**John SARACENA, et al.**

v.

**The UNITED STATES.**

**No. 216–74.**

United States Court of Claims.

Jan. 22, 1975.

Joseph M. Jacobs, East Orange, N. J., attorney of record, for plaintiffs.

Theodore D. Peyser, Jr., Donald H. Olson, and Kenneth R. Pike, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant.

Before COWEN, Chief Judge, and DAVIS and BENNETT, Judges.

### ON DEFENDANT'S MOTION TO DISMISS

COWEN, Chief Judge:

In 1962, plaintiffs found more than two million dollars in United States currency which they turned over to the Government. After the Internal Revenue Service had applied all the money to the recovery of income taxes, penalties, and fines due by the individual to whom the funds belonged, the District Director of the IRS paid each plaintiff a reward. They brought this action to recover additional amounts as rewards, claiming that the amounts paid were inadequate and that the determination of the amount of the reward was not made in compliance with 26 U.S.C. § 7623 and Treasury Regulation 26 C.F.R. 301.7623–1. The case is before the court on defendant's motion to dismiss for failure to state a cause of action upon which relief can be granted.

After considering the briefs of the parties and the facts admitted by defendant's motion, we conclude that the amount of the reward was determined pursuant to a statute and regulation which vest broad discretion in the District Director of the Internal Revenue Service, and that plaintiffs have failed to show that his determination was an abuse of the discretion reposed in him. Therefore, we grant defendant's motion to dismiss.

The plaintiffs are seven workmen who were employed during the summer of 1962 to remove old doors and install new ones in several garage buildings in Jersey City, New Jersey.[1] In the course of their work on July 3, 1962, they found $2,438,110 in United States currency in the trunk of an old car in one of the garages. Upon finding the money, plaintiffs notified the Federal Bureau of Investigation, whereupon FBI agents took possession of the currency and turned it over to the United States Marshal for the District of New Jersey. Shortly after the money was found, it was discovered that it probably belonged to one Joseph V. Moriarty. On July 5, 1962, the Internal Revenue Service effected a jeopardy assessment for delinquent income taxes and interest due from Mr. Moriarty in an amount which exceeded the currency found by plaintiffs. Thereafter, the Internal Revenue Service caused a lien to be filed in Hudson County, New Jersey, and a notice of levy to be served upon the U.S. Marshal who, on July 16, 1962, paid the $2,438,110 into the Treasury of the United States.

On September 19, 1962, when Mr. Moriarty filed a tax return for 1961, he reported the $2,438,110 as "other income" and requested that any moneys refundable to him be used to reduce his back taxes. The entire sum, which the workmen turned over to the FBI, has been applied to income taxes, penalties, fines, and forfeitures owed by Mr. Moriarty.

Beginning in 1962, several law suits were filed by parties claiming an inter-

est in the $2,438,110. The United States District Court for the District of New Jersey held that Hudson County, New Jersey, was entitled to the money. On February 25, 1969, the seven plaintiffs filed an application and a public voucher for a reward based on their having turned over the currency to Federal authorities and the fact that all of it was applied to the recovery of taxes, penalties, fines, and forfeitures owed by Mr. Moriarty. The application was not acted upon by the District Director of Internal Revenue pending a review of the District Court's decision by the Court of Appeals for the Third Circuit. On January 25, 1972, the Court of Appeals reversed the judgment of the District Court, dismissed the complaint of Hudson County, and held that the United States was the owner of the money. *See* Stapleton v. Two Million Four Hundred Thirty-Eight Thousand, One Hundred and Ten Dollars, 454 F.2d 1210 (3rd Cir.), cert. denied, 409 U.S. 894, 93 S.Ct. 111, 34 L.Ed.2d 151 (1972).

On May 9, 1974, after it was firmly established that the United States would be able to retain the money and apply it to the taxes due by Mr. Moriarty, the District Director of the Internal Revenue Service awarded each of the plaintiffs or their heirs $4,590. The total amount of the reward was $32,131, which was approximately 1.32 percent of the amount recovered by the United States in taxes and other assessments against Mr. Moriarty.

Plaintiffs' claims are based on 26 U.S.C. § 7623 and the implementing regulation, 26 C.F.R. § 301.7623-1, which provide:

§ 7623. *Expenses of detection and punishment of frauds*

The Secretary or his delegate, under regulations prescribed by the Secretary or his delegate, is authorized to pay such sums, not exceeding in the aggregate the sum appropriated there-

---

1. One of the workmen, Edward Schiess, has died since the money was found, and is represented in this action by Grace Schiess, the administratrix of his estate.

for, as he may deem necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law.

§ 301.7623–1 *Rewards for information relating to violations of internal revenue laws.*

(a) *In general.* A district director may approve such reward as he deems suitable for information that leads to the detection and punishment of any person guilty of violating any internal revenue law, or conniving at the same. The rewards provided for by section 7623 are limited in their aggregate to the sum appropriated therefor and shall be paid only in cases not otherwise provided for by law.

\* \* \* \* \* \*

(c) *Amount and payment of reward.* All relevant factors, including the value of the information furnished in relation to the facts developed by the investigation of the violation, shall be taken into account by a district director in determining whether a reward shall be paid, and, if so, the amount thereof. The amount of a reward shall represent what the district director deems to be adequate compensation in the particular case, normally not to exceed 10 percent of the additional taxes, penalties, and fines which are recovered as a result of the information. No reward, however, shall be paid with respect to any additional interest that may be collected. Payment of a reward will be made as promptly as the circumstances of the case permit, but generally not until the taxes, penalties, or fines involved have been collected. However, the informant may waive any claim for reward with respect to an uncollected portion of the taxes, penalties, or fines involved, in which case the claim may be immediately processed. No person is authorized under these regulations to make any offer, or promise, or otherwise to bind a district director with respect to the payment of any reward or the amount thereof.

It is the position of the plaintiffs that once the District Director determined that a reward was due them, it was incumbent upon him to fix the amount upon a reasonable basis and that no reasonable basis has been shown. The argument continues that, since the regulation lays down a standard—10 percent of the additional taxes, penalties, and fines involved—the small amount of the reward demonstrates, without more, that the decision was arbitrary and that the burden is on the defendant to show the propriety of such a deviation from the standard set forth in the regulation.

Unfortunately for plaintiffs' contentions, the regulation before us gives the District Director of Internal Revenue Service such broad discretion that the scope of our review of his decision is very limited. In defining the narrow scope of judicial review in such cases, the Supreme Court stated:

> \* \* \* More than a half-century ago this Court declared that "where Congress has committed to the head of a department certain duties requiring the exercise of judgment and discretion, his action thereon, whether it involve questions of law or fact, will not be reviewed by the courts, unless he has exceeded his authority or this court should be of opinion that his action was clearly wrong." \* \* \* [United States v. Shimer, 367 U.S. 374, 381–382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)]

The rule there announced by the Supreme Court has been followed by many decisions of this court. *See, e. g.,* Odian v. United States, 203 Ct.Cl. 306 (1973); Port Authority of St. Paul v. United States, 193 Ct.Cl. 108, 432 F.2d 455 (1970); Daniels v. United States, 187 Ct.Cl. 38, 407 F.2d 1345 (1969).

█ Stated another way, to sustain an administrative interpretation of such a

broadly written regulation, it is not necessary to find that the agency construction is the only reasonable one or that it is the result the court would have reached had the question arisen in the first instance in judicial proceedings. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The judicial function is exhausted when it is found that there is a rational basis for the conclusions of the administrative agency. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

██ It is clear from the language of the regulation that the District Director has complete discretion in the first instance to determine whether an award should be made and, in the second, to fix what, in his judgment, amounts to adequate compensation. There is no statutory or regulatory requirement for a hearing or a well reasoned explanation of the decision. The mere fact that the reward was less than the 10 percent mentioned in the regulation as a possible upper limit does not authorize the court to set aside the award and order a trial to determine adequate or reasonable compensation. Plainly, the amount of the reward was within the range contemplated by the statute and the regulation. The burden is on the plaintiffs to establish that there was no rational basis for the District Director's decision, and they have failed to discharge that burden.

Moreover, there was no express contract to pay plaintiffs compensation, and it has been held that the regulation here involved, as well as similar regulations in force under prior laws, do not give rise to an implied contract. See Schein v. United States, 352 F.Supp. 182, 185–186 (E.D.N.Y. 1972); Gordon v. United States, 92 Ct.Cl. 499, 36 F.Supp. 639 (1941); Katzberg v. United States, 93 Ct.Cl. 281, 36 F.Supp. 1023, cert. denied, 314 U.S. 620, 62 S.Ct. 61, 86 L.Ed. 498 (1941).

For the reasons stated, defendant's motion to dismiss is granted, and plaintiffs' petition is hereby dismissed.