Oral contract; Court of Claims jurisdiction; Witness Protection Program; discretion of officials re participation in program. — On May 16, 1980 the court entered the following order:
Before Davis, Judge, Presiding, Kashiwa and Bennett, Judges.
This case, before the court on defendant’s motion for summary judgment, seeks dismissal of plaintiffs’ petition on the grounds that it fails to state a claim within the jurisdiction of the court. Plaintiffs’ claim is based on an alleged express oral contract, arising from promises said to have been made by 13 of defendant’s agents, to provide plaintiffs with certain benefits pursuant to the Witness Protection Program of the Department of Justice under the Organized Crime Control Act of 1970, Pub. L. No. 91-452, title V, §§ 501-504, 84 Stat. 933 (1970), and pursuant to 28 U.S.C. § 524 (1976). Plaintiffs also claim these benefits are payable under the Act of August 21, 1974, Pub. L. No. 93-381, title I, 88 Stat. 613, 615 (1974), which gives to the Internal Revenue Service authority to pay necessary expenses of the Service for investigation and enforcement activity. The Federal Bureau of Investigation and the Internal Revenue Service, respectively, at different times between 1973 and 1979, pursuant to the aforesaid authority, paid plaintiffs $85,352.72 and $15,611.47, a total of $100,964.19, for the cooperation of plaintiffs, and their protection, as informants and witnesses in an investigation of political corruption in the letting of tree trimming contracts by municipal governments in the Chicago, Illinois, area. Plaintiff John Doe was granted immunity for his *633 own participation in these matters in return for his cooperation in the prosecution of others.
The petition does not state the amount of damages claimed for breach of the alleged contract, although one of the affidavits submitted for plaintiffs states that in 1975 they claimed $1 million from the Internal Revenue Service. Plaintiffs’ association with defendant in the Witness Protection Program was terminated in April 1979. Defendant alleges that it kept its commitments to plaintiffs, but that they did not keep theirs with defendant, moving about without defendant’s knowledge or approval, refusing to work when offered employment, impersonating federal officers, issuing insufficient fund checks, and renting automobiles not returned, all in violation of the terms of the Program. By order of the court on November 2, 1979, plaintiffs were permitted to bring their suit with fictitious names, for security reasons, with their true identity being known to defendant. We hold for defendant.
It is unnecessary to recite in detail the long train of events pursuant to which plaintiffs have unsuccessfully pursued their claims with the respective Government agencies, with Congress, and in District Court pursuant to the Federal Tort Claims Act. Suffice it to say that in exchange for cooperation, it is alleged by plaintiffs that they were orally promised new identities, relocation, assistance in acquiring a new business, and a stipend sufficient to pay all reasonable living expenses until transition to a new life had been accomplished. Lifetime security, furnished by defendant, is alleged to have been a part of the agreement. Plaintiffs say that, in fact, they did not get all they were promised and eventually were on public relief. As a result, plaintiffs claim that they have lost their property and entire net worth, have suffered physical and mental illnesses, have incurred debts they are unable to pay, have suffered shame, humiliation, and inability to lead a normal life, and have become alienated from, and lost the society, companionship and affection of, their children, and that their damages are permanent in nature.
The court’s decision turns on the legal issues presented by the pending motion. Under the provisions of the Organized Crime Control Act of 1970, admission of persons *634 to the Witness Protection Program is reserved to the discretion of the Attorney General, as is the compensation paid to such persons. Pursuant to 28 U.S.C. § 510 (1976), the Attorney General delegated some of his authority to supervise and control the Program to the Director of the United States Marshals Service. This was done by a regulation published at 28 C.F.R. §§ 0.111 et seq. (1973). The Attorney General also caused to be issued Department of Justice Order OBD 2110.2, dated January 10, 1975, entitled Witness Protection and Maintenance Policy and Procedures. Paragraph 12 of that order states:
* * * Investigative agents and attorneys are not authorized to make any commitments regarding maintenance levels to prospective witnesses. * * *
Paragraph 7(d) states that, "Representations or agreements made without authorization will not be honored by the U.S. Marshals Service.” Paragraph 11 of the order reserves to the Service "sole authority” to arrange for the maintenance of persons designated as protected witnesses. Such witnesses are required to obtain gainful employment, with defendant’s assistance where necessary, and where employment is refused maintenance may be terminated immediately. They are also supposed to act responsibly in payment of bills for which defendant furnishes funds. Maximum daily and monthly rates of maintenance are set forth in the order. In addition, certain medical expenses are provided for, over and above the monthly rates, along with such things as housing expenses, travel, and moving expenses. The Marshals Service has complete discretion in these matters, once a determination has been made to admit persons to the Witness Protection Program.
Pursuant to the aforesaid Act of August 21, 1974, the Internal Revenue Service, by orders, has also promulgated guidelines which govern the payment of confidential expenses. These orders detail which individuals may authorize confidential expenditures to informants and witnesses. These individuals include the Director or Chief of the Intelligence Division, the Assistant Commissioner for Compliance, and in some cases Regional Commissioners and Assistant Regional Commissioners, and the District Direc *635 tor for Intelligence. The IRS Manual provides that this authority is discretionary and cannot be redelegated to subordinate officials. IRS Delegation Order No. 16, January 13, 1956; IRS Manual Transmittal MT 1218-27, December 12, 1973; IRS Manual Transmittal MT 9300-72, July 18, 1973; IRS Manual Transmittal MT 9180-5, November 20, 1973, and IRS Manual Supp. MS 9G-24, December 10, 1975.
The fatal weakness in plaintiffs’ claim is that nowhere does a statute or regulation expressly or by implication establish a right that plaintiffs be paid anything. On the contrary, it is quite clear that determinations regarding eligibility for participation in the Program and the range of benefits to be afforded those who are permitted to participate, are a completely discretionary function with the named officials. No statutory obligation is imposed on those officials to provide the assistance they are authorized to furnish, in their judgment. For instance, the explicit language of section 502 of the Organized Crime Control Act says:
* * * Any person availing himself of an offer by the Attorney General to use such facilities may continue to use such facilities for as long as the Attorney General determines the jeopardy to his life or person continues. [84 Stat. 933.]
This accords with the legislative history which suggests that the intent was that these determinations were not to be reviewable. Publ. L. No. 91-452, H. Rep. No. 91-1549, 91st Cong., 2d Sess., reprinted in [1970] U.S. CODE CONG. & AD. NEWS 4007, 4024. Congress obviously could have created a money liability but it chose not to do so. Nor is the Attorney General commanded to take any action one way or the other. No statute commands the payment of money in this case. Without such a command there is no entitlement which can be addressed by this court. United States v. Testan, 424 U.S. 392 (1976); Handsaker v. United States, 223 Ct.Cl. 704 (1980); Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002 (1967); Austin v. United States 206 Ct. Cl. 719, cert. denied, 423 U.S. 911 (1975).
Plaintiffs seek to surmount the foregoing difficulties with their case by claiming that it sounds in contract rather *636 than for violation of a federal statute or regulation. This theory has no merit. The payments under the informant-witness protection programs of the Attorney General and the Internal Revenue Service are nontaxable gratuities from the Government for persons in need. This has been the consistent administrative interpretation of the Program by the Attorney General and, with an exception noted below, apparently by the IRS as well. The interpretation by agencies of their statutory responsibilities is entitled to great weight and where it has a rational basis will be followed by the courts. Federal Maritime Comm’n v. Seatrain Lines, Inc., 411 U.S. 726, 746 (1973); Thorpe v. Housing Authority, 393 U.S. 268, 276 (1969); Udall v. Tallman, 380 U.S. 1 (1965); Sode v. United States, 209 Ct. Cl. 180, 531 F.2d 531 (1976).
Although plaintiffs make no reference to it to support their case, there is documentary evidence of record offered by defendant and relied on by defendant, but which supports plaintiffs’ point or view. It is Order No. 16, issued January 13, 1956, by Russell C. Harrington, Commissioner of Internal Revenue, entitled Delegation Order for Approval of Contracts, Form 164-A, for Purchase of Information and Payment of Lump Sum Therefor. The order delegates authority to approve such contracts to Regional and Assistant Regional Commissioners.
This exhibit belies defendant’s argument that the IRS administrative interpretation of these arrangements has consistently been on a noncontract basis. But, the exhibit stands alone to support the contract concept and is plainly in conflict with the weight of the evidence, congressional intent, and reasonableness. For instance, MT 1218-14, October 13, 1972, in the IRS Manual, states that payments for information provided by protected informants "should, where practicable, be made only after the information or evidence has been obtained, evaluated, and determined worthy of compensation.” This does not sound like a binding contract obligation, but rather a discretionary payment. In any event, Order No. 16 speaks of lump-sum contracts only, which is not the kind of alleged contract plaintiffs claim they had. Payments to plaintiffs spanned 6 years and plaintiffs complain that these payments, largely *637 made on a monthly basis, do not continue. We are satisfied that when defendant terminated its arrangements with plaintiffs for cause that it followed the regulations. For its part, Congress has never indicated that expenditures under this Program, or other discretionary programs, should arise out of contract relationships rather than from the discretionary authority delegated to selected administrators by statute and regulation. The contrary is quite clear. United States v. Shimer, 367 U.S. 374, 381-82 (1961); McGrath v. United States, 207 Ct. Cl. 978 (1975); Saracena v. United States, 206 Ct. Cl. 90, 96, 508 F.2d 1333, 1336 (1975).
Plaintiffs do not deny that there was no agreement as to how much money would be provided to them or over how long a period. They say that the details of agreement were to be determined by performance and upon "implied terms of reasonableness” and that defendant is bound by oral promises of its agents under the doctrines of apparent authority and equitable estoppel. Even assuming there was any meeting of the minds of the parties, the court has not been shown that defendant’s agents, identified by plaintiffs as having made the vague promises that they rely upon, had any authority to override the statutes and regulations which limited their authority. In this regard, plaintiffs would have us reject the teaching of the Supreme Court in Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947), and its innumerable progeny. Considerations to support the historic rule seem especially strong where oral contracts are alleged. Molony & Rubien Constr. Co. v. United States, 214 Ct. Cl. 809 (1977); Haight v. United States, 209 Ct. Cl. 698, cert. denied, 429 U.S. 841 (1976); Housing Corp. of America v. United States, 199 Ct. Cl. 705, 468 F.2d 922 (1972). We could not reject this authority even if we had any inclination to do so. On the contrary, this seems to be a classic case for application of the Supreme Court’s rule requiring real, as opposed to apparent, authority for an agent to bind the United States.
Defendant raises various other defenses to application of the contract doctrine to this case. Defendant says such a doctrine is inapplicable and inapposite to the ends of criminal justice. Defendant says that there is no authority for judicial review of the internal procedures of prosecutori *638 al agencies for case development and management. Defendant argues that there was no consideration here for a contract because plaintiff was bound to testify as a public duty. Defendant argues that the injuries complained of sound in tort, over which we have no jurisdiction. 28 U.S.C. § 1491 (1976). Defendant says contracts for services of persons must be in writing. 31 U.S.C. § 200(a)(1) (1976). It is not necessary to reach these arguments in view of what we have concluded, as set forth above. Finally, we discern no triable issues of fact which could or would mandate a result in plaintiffs favor. We have no jurisdiction here.
it is therefore ordered, upon consideration of the defendant’s motion for summary judgment and the supporting and opposing briefs, affidavits and exhibits, without oral argument for which plaintiffs’ request is denied, that defendant’s motion for summary judgment is granted. The petition is dismissed. Defendant’s motion of December 17, 1979, to suspend discovery and to be relieved of compliance with the trial judge’s pretrial order is mooted.