**Anthony STACK, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 91–1640C.**

United States Claims Court.

April 8, 1992.

Leonard W. Yelsky, Cleveland, Ohio, for plaintiff.

John Warshawsky, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant. Karen F. Keller, I.R.S., of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion to dismiss pursuant to RUSCC 12(b)(1) and 12(b)(4). The Internal Revenue Service (the "IRS") may extend monetary rewards to persons providing information that leads to the detection and punishment of those violating internal revenue laws. 26 U.S.C. § 7623 (1988).[1] The implementing regulation, 26 C.F.R. § 301.7623–1 (1984), provides, *inter alia:*

> All relevant factors ... shall be taken into account by a district director in determining whether a reward shall be paid, and if so, the amount thereof. The amount of a reward shall represent what the district director deems to be adequate compensation in the particular case....

Plaintiff takes the position that he was not paid commensurate with the value of information that he gave to the IRS leading to a substantial recovery. The issue is whether the Claims Court has jurisdiction over plaintiff's claim and, if so, whether his complaint fails to state a claim for payment of a sum certain.

## FACTS

For the purposes of a motion to dismiss, the facts alleged in the complaint are construed in the light most favorable to the non-moving party, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the following facts alleged in the complaint, which, in any event, are undisputed, are deemed to be true for the purposes of this motion. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988).

On October 24, 1984, Anthony Stack ("plaintiff") signed a contract with the IRS. On November 5, 1984, the Regional Commissioner, Central Region, executed the agreement on behalf of the IRS. Pursuant to the contract, plaintiff agreed to "provide [the IRS with] information which could lead to the collection of over one hundred million dollars ($100,000,000.00) in unpaid taxes from the K–MART CORPORATION(S)." Plaintiff also specifically agreed to disclose K–Mart Corporation's ("K–Mart") possible criminal tax liability. The contract specified particular transactions and accounting methods through which K–Mart had allegedly underreported its Federal income tax liability.

The IRS agreed to pay plaintiff a reward "upon receipt of valuable information ... not previously known by the [IRS] ... which results in the collection of taxes [from K–Mart] ...." The contract entitled plaintiff to an award of

> up to five percent of the net tax deficiencies, penalties, and fines subsequently collected as a direct result of information supplied, the total of all payments not to exceed $5,000,000.00. The informant [plaintiff] asserts that additional taxes to

---

1. 26 U.S.C. § 7623 (1988), provides:
   Expenses of detection and punishment of frauds
   The Secretary, under regulations prescribed by the Secretary, is authorized to pay such sums, not exceeding in the aggregate the sum appropriated therefor, as he may deem necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law.

be collected from K–MART CORPORATION(S) ... will amount to an estimated $100,000,000.00....[2]

Plaintiff subsequently provided the specified tax information to the IRS. As a result, the IRS recovered unpaid taxes from K–Mart.[3] On September 14, 1990, the IRS, Central Region, informed plaintiff that his reward amount was $182,743.00.

In a letter dated September 29, 1990, plaintiff requested that the IRS reconsider its calculation of the reward. Plaintiff contended that he "was expecting a substantially greater amount in view of the large amount of taxes actually recovered." Plaintiff also articulated various reasons why the tax information he supplied warranted further compensation.

In a February 7, 1991 letter, the IRS confirmed the reward amount. The letter explained:

> [Y]ou can be assured that the investigation was properly handled; that the sum allowed you as a reward is consistent with the facts developed by the examination; and that it was computed in accordance with the established policy in all similar cases.

On November 26, 1991, plaintiff filed suit in the Claims Court alleging a breach of contract and seeking $4,817,257.00 representing the maximum allowable amount under the contract, plus interest.

## DISCUSSION

### 1. *Subject matter jurisdiction*

Defendant argues that the Tucker Act, 28 U.S.C. § 1491 (1988), permits suits against the Government only in certain discrete situations, none of which applies in this case. Defendant asserts that 26 U.S.C. § 7623 gives the Secretary of the Treasury complete discretion as to the amount, if any, of plaintiff's reward. Consequently, defendant essentially maintains

that the Claims Court could never have subject matter jurisdiction over a tax reward claim against the United States.

■ The Tucker Act provides the Claims Court with the threshold jurisdiction to hear certain suits against the sovereign. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). However the Tucker Act does not create a substantive right of recovery against the United States for money damages. *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). Rather, claimants must sue under the Constitution, an Act of Congress, a regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc).

■ In addition to considering as true the facts alleged in the complaint, the court must also consider whether "these facts reveal any possible basis on which the nonmovant might prevail." *W.R. Cooper Gen. Contr., Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). If the court can discern a possible scenario under which plaintiff could recover, then defendant's motion to dismiss for lack of subject matter jurisdiction must be denied. *Id.*

The Claims Court has held that it has subject matter jurisdiction over this type of tax refund case. *See Tyson v. United States*, 91 Ct.Cl. 139, 32 F.Supp. 135 (1940) (in a Customs reward case, Court of Claims had jurisdiction to decide whether informant made out a case of insufficient payment). In *Thomas v. United States*, 22 Cl.Ct. 749 (1991), an informant furnished the IRS with valuable tax information regarding an estate. As a result of this information, the IRS recovered approximately $1.8 million. The IRS refused to pay a reward to the informant. The Claims Court held that it had jurisdiction to decide the dispute, but dismissed the case because

---

**2.** Paragraphs 17 and 18 of the agreement bound each party's successors, heirs, and assignees and provided that all modifications to the agreement would be in a writing accepted by the party against whom the modification was being asserted.

**3.** Plaintiff implies that the information that he gave the IRS resulted in recovery of $100 million in unpaid taxes from K–Mart. Plaintiff sues for the difference between the reward stipulated by the IRS and the maximum recovery allowable under the agreement.

the parties had not reached any agreement, oral or written, as to the reward amount.

▇ In this case plaintiff and the Regional Commissioner for the IRS signed a contract confirming plaintiff's entitlement to a tax reward. If plaintiff gave certain valuable tax information about K–Mart to the IRS, the IRS was obligated to pay plaintiff a reward. Plaintiff's complaint and his brief in response to defendant's motion allege a breach of this contract.[4] Looking at the complaint in the light most favorable to the non-movant, plaintiff has alleged a breach of contract over which this court has jurisdiction.[5] *See Reynolds*, 846 F.2d at 747 (allegation that plaintiff and the Government entered into a contract, left unchallenged, would be sufficient to support Tucker Act jurisdiction).

### 2. *Failure to state a claim*

▇ Defendant asserts that plaintiff's complaint fails to state a claim upon which relief can be granted because the contract at issue vested the IRS with complete discretion as to the amount of compensation to be awarded. In particular, defendant cites to contract language providing for the award of "up to five percent of the net tax deficiencies ... [collected as a result of plaintiff's tax information] not to exceed $5,000,000.00." Defendant argues that this language "only limited the total amount that the government would pay [plaintiff] ... for his services; the contract did not *obligate* the government to pay [plaintiff] ... anything." Def's Br. filed Jan. 27, 1992, at 8 (emphasis in original; footnote omitted).

The IRS has broad discretion to decide whether to make an award and/or the amount of that award. *Saracena v. United States*, 206 Ct.Cl. 90, 95, 508 F.2d 1333, 1336 (1975). Neither 26 U.S.C. § 7623 nor

26 C.F.R. § 301.7623–1, standing alone, obligates the IRS to pay a reward to a tax informant.

An express contract to pay compensation to a tax informant is a different matter. A contract must contain a sum certain, however, in order for a plaintiff to sue upon it. *Gordon v. United States*, 92 Ct.Cl. 499, 36 F.Supp. 639 (1941). The Court of Claims in *Gordon* held that an IRS offer to pay a tax informant " 'such reward as the Commissioner ... may deem suitable' " did not constitute an offer to pay a sum certain. 92 Ct.Cl. at 500, 36 F.Supp. at 640. By contrast, if the Commissioner promises "definite sums" for tax informant information, an express contract would exist and a plaintiff would state a claim. *Id.* at 501, 36 F.Supp. at 640. Similarly, if 26 U.S.C. § 7623 authorized the payment of a specific percentage of any tax proceeds recovered as a result of an informant's information, a plaintiff would also state a claim if the IRS payment did not comport with the statute. *See id.* (citing *Tyson v. United States*, 91 Ct.Cl. 139, 32 F.Supp. 135 (1940)).

A plaintiff may also state a claim if the IRS establishes, either by oral promise or written contract, the method for calculating an award and then fails to make an appropriate payment pursuant to that calculation. In *Merrick v. United States*, No. 654–86T (Cl.Ct. July 20, 1987) (unpubl.), *reversed and remanded*, 846 F.2d 725 (Fed.Cir.1988), a tax informant ("Merrick") provided the IRS with information regarding a tax shelter. The IRS informed Merrick that it recovered over $10 million in unpaid taxes from 1,585 tax shelter investors. Merrick filed a claim for a reward with the IRS. Later, an acting district director orally "informed Merrick that [he] ... would receive a reward ... and that the reward would be calculated under ¶ 1 of IRS Publication No. 733 (July 1980)."

---

4. In his complaint plaintiff asserted that his claim arose under 26 U.S.C. § 7623 and that jurisdiction was conferred on the Claims Court by the Tucker Act. However, in his responsive brief, plaintiff alleges that the complaint "sets forth an express written contract between the parties." Plf's Br. filed Feb. 18, 1992, at 2. The court accepts plaintiff's most recent allegation of jurisdiction, *i.e.*, a breach of contract.

5. Defendant cites numerous Court of Claims cases in which the court dismissed tax reward claims. However, all of these cases were dismissed for failure to state a claim. Furthermore, in none of these cases did plaintiff sue on a written contract, as opposed to an authorizing regulation.

846 F.2d at 725. That publication provided, *inter alia*, that such tax informants would be paid a specific percentage of monies recovered.[6]

After the IRS paid Merrick a total of $31,000.00 for his information, he filed suit in the Claims Court. The Claims Court dismissed Merrick's suit for failure to state a claim. The Federal Circuit reversed and remanded, holding that Merrick alleged facts sufficient to state a contract claim against the United States. 846 F.2d at 726. "Merrick's complaint alleges that an Acting District Director fixed the amount of the reward in February 1984 *by establishing how the IRS would calculate it . . . .*" *Id.* (emphasis added). The court explained:

> [O]ur precedents establish that the subject statute and regulation amount to an indefinite reward offer that an informant may respond to by his conduct. *See Lagermeier [v. United States]*, 214 Ct.Cl. [758], 760, 566 F.2d 1188 (quoting *Gordon*, 36 F.Supp. at 640). Because, however, the obstacle of indefiniteness may be removed by the subsequent conduct of the parties, an enforceable contract arises when the parties fix the reward amount . . . They have done so here. . . .

*Id.* (citations omitted). Essentially, the IRS negotiated a specific reward amount when it stated that Revenue Publication No. 733 would govern the reward.[7] This negotiation was sufficient to support a breach of contract claim against the IRS.

Here, plaintiff entered into a written contract with the IRS to provide tax information in exchange for a reward payment. Like that in *Merrick*, the contract in this case established parameters for calculating plaintiff's reward. However, unlike the oral contract at issue in *Merrick*, plaintiff's written contract did not confirm a precise reward. Rather, the IRS reserved discretion to award "up to five percent of the net deficiencies collected . . . not to exceed $5,000,000.00."[8]

Plaintiff does not allege that the IRS promised, in negotiations or otherwise, to pay any sum certain, let alone to pay according to the mandatory language of Publication No. 733. Plaintiff points solely to the contract as a basis for the IRS' liability. While it appears that the parties negotiated over a period of time, this fact works against plaintiff. A earlier draft of the contract provided for payment of 5 percent of the net proceeds recovered. The final version of the contract changed that mandatory language to the more discretionary "up to five percent." Thus, unlike *Merrick*, the parties' negotiations gave discretion to the IRS to calculate the final reward payment.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted and plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted. The Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

No costs.

---

6. IRS Publication No. 733 (Rev. 7/80), provides: The District Director will determine whether a reward will be paid and its amount . . . The amount of reward will be calculated as follows:
   1. For specific and responsible information that caused the investigation and resulted in recovery, the reward *will be* 10 percent of the first $75,000 recovered, 5 percent of the next $25,000, and 1 percent of any additional recovery.
   (Emphasis added.)

7. Merrick knew the total sum recovered from the tax shelter investors. Consequently, when the acting district director referenced Publication No. 733 (which mandated non-discretionary percentages in calculating rewards) as the basis for Merrick's reward, Merrick could precisely calculate the amount due him.

8. In any case, the amount awarded to plaintiff ($185,000.00) appears to satisfy these contractual requisites.