**Jack S. CONWAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–295 T.**

United States Court of Federal Claims.

June 6, 2003.

Steven E. Hayes, Metairie, Louisiana, attorney of record for the plaintiff. David S. Sherman, Metairie, Louisiana, of counsel.

G. Robson Stewart, Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., with whom was Assistant Attorney General Eileen J. O'Connor, Mildred L. Seidman, Chief, Court of Federal Claims Section, and David Gustafson, Court of Federal Claims Section, of counsel.

### *OPINION*

MEROW, Senior Judge.

In this claim for breach of contract, plaintiff, Jack Conway, seeks payment of an additional award pursuant to a tax informant agreement entered into with the Internal Revenue Service ("IRS").[1] Defendant as-

---

1. In the complaint, plaintiff asserted that this court has jurisdiction based on the Tucker Act,

serts that no additional award is due under the contract. The matter is now before the court on defendant's motion for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). For the reasons stated below, defendant's motion is GRANTED.

## Background

### Facts

Unless otherwise noted, the following facts are undisputed. On August 13, 1996, plaintiff and the IRS entered into a written "Informant Award Agreement" ("Agreement") under which plaintiff was to provide certain confidential information to the IRS regarding alleged underpayment of taxes by a third-party taxpayer for tax years 1985 through 1996 and to assist in any criminal or civil investigation. The IRS agreed to pay plaintiff a sum of $25,000 once it decided to pursue the allegations by initiating a criminal investigation or civil examination against the taxpayer. Pursuant to this provision, the IRS made a payment of $25,000 to plaintiff on December 10, 1999. This initial payment is unrelated to the collection process of any underpayment of taxes and is credited against the total reward provided under the Agreement. Paragraph seven of the Agreement set out the terms under which plaintiff would receive any additional reward:

> Further, the Service will pay the Informant a sum equal to ten (10) percent of the net taxes, fines and penalties (but not interest) collected from * * *, as a result of the information provided by the Informant, for the tax years 1985 through 1996. The total amount of all payments to the Informant shall not exceed $7,000,000.00 (seven million dollars). No payment shall be made if any of the conditions set forth in this Agreement are not met.

Pl.'s Submissions Ex. 1.

The Agreement specifies that payment of any reward will not be made until after the additional tax finally determined to be owed to the IRS has been collected from the taxpayer.[2] *Id.* at ¶ 7(a). In calculating plaintiff's reward, any taxes collected from the taxpayer would be reduced by the amount of any corresponding reduction of the taxpayer's taxes during the period covered under the Agreement. *Id.* at ¶ 7(b). The Agreement provides that the IRS "will not disclose to the Informant the nature or amount of IRS adjustments or other tax information related to the Taxpayer." *Id.* at ¶ 7(c). Pursuant to the Agreement, plaintiff agreed that it would not disclose information about the taxpayer to anyone other than the IRS. Paragraph 14 provides:

> The Informant shall not disclose any information regarding the taxpayer, the tax evasion scheme, or the investigation, regardless of the source of the information, to any person other than the IRS officials identified in paragraph 11 of this agreement or any other person designated by those officials. In particular, the Informant will not disclose any information protected under IRC Section 6103 except in accordance with the instructions of the Internal Revenue Service officials identified in paragraph 11.

*Id.* at ¶ 14.

Paragraph eight of the Agreement states that plaintiff is not entitled to payment under any of the following circumstances:

> (a) Information furnished by the Informant is of no value;
>
> (b) Information furnished by the Informant was already known to the IRS or was available in public records, or if the Taxpayer identified by the Informant was already under criminal investigation or civil examination by the IRS with regard to the specific alleged scheme referred to herein;
>
> (c) The Informant obtained, or is furnishing, the information while an employee of the Treasury Department, or if the Infor-

---

28 U.S.C. § 1491(a)(1), over his claim for money damages arising under 26 U.S.C. ("I.R.C.") § 7623 (2000). However, plaintiff states that he is seeking additional recovery pursuant to a written contract entered into with the IRS. Therefore, plaintiff's complaint is properly construed as a claim for breach of contract.

**2.** According to the Agreement, a final determination of tax liability, defined by 26 I.R.C. § 7481, is not made until the expiration of the statutory period for a taxpayer to file a claim for refund and to bring suit against the United States for said refund.

mant is furnishing the information on behalf of such an individual;

(d) The Informant obtained the information as part of the Informant's official duties as an employee of any other federal agency, or if the Informant is furnishing the information on behalf of such an individual;

(e) The Informant obtained, or is furnishing, the information while a State officer or member of a State body or commission having access to federal returns, copies or abstracts, or if the Informant is furnishing the information on behalf of such an individual;

(f) Payment would be contrary to State or local law; or

(g) The recovery is so small as to result in a reward payment of less than twenty five dollars ($25.00).

(h) The Informant participated in the evasion scheme by designing, or assisting in the design, of the scheme or prepared the tax returns for the taxpayer-corporation with the knowledge that taxes were being evaded.

*Id.* at ¶ 8.

Plaintiff contends that prior to execution of the Agreement, he met with two representatives of the IRS Criminal Division for approximately four hours and provided the IRS with documentation to support his allegations concerning the taxpayer. According to his calculations, plaintiff maintains that the alleged illegal activities of the taxpayer could have conservatively netted an additional tax liability of approximately $75 million. Plaintiff asserts that he was informed at that meeting that the IRS would need to determine whether there was already an investigation against the taxpayer before it entered into the Agreement.

In a letter dated March 17, 2000, the IRS informed plaintiff that no additional reward would be paid under the Agreement. According to this letter, the IRS stated that "[b]ecause of the disclosure restrictions of section 6103 of the Internal Revenue Code, we cannot tell you the specific reasons that no additional reward money can be paid." Pl.'s Ex. 12. On May 22, 2000, the IRS notified plaintiff that his services were no longer needed and that his status as an informant for the IRS was terminated. Pl.'s Ex. 13. On August 29, 2001, the IRS, citing section 6103 of the Internal Revenue Code, reiterated that it could not disclose the specific reasons why plaintiff would not receive an additional reward. However, the IRS stated that no award could be paid for one or several of the following reasons:

- The information furnished was of no value in the recovery of taxes.

- The IRS already had the information, or the information was available in accessible public records.

- The tax recovery was so small as to result in a reward payment of less than twenty-five dollars ($25).

- Payment would be contrary to State or local law.

- The information was obtained as part of your official duties as an employee of the Federal Government, or the information was furnished on behalf of such an individual.

- The information was obtained as a result of your participation in the evasion scheme by designing, or assisting in the design, of the scheme or prepared the tax returns for the taxpayer corporation with the knowledge that taxes were being evaded.

- The information was obtained while a State officer or member of a State body or commission having access to federal returns, copies, or abstracts, or the information was furnished on behalf of such individual.

Pl.'s Ex. 14.

According to the January 24, 2002 declaration of Jeaneen Heiskell, Senior Analyst, Claims for Reward Program, Small Business/Self-Employed Division of the IRS, who conducted a review of plaintiff's claim for purposes of this litigation, no additional reward payment is due because of one or more of the following reasons:

- The information furnished by the informant was of no value in the recovery of taxes.

- The IRS already had the information, or the information was available in accessible public records.
- The tax recovery was so small as to result in a reward payment of less than twenty-five dollars ($25.00).
- The information was obtained as a result of the informant's participation in the evasion scheme by designing, or assisting in the design, of the scheme or prepared the tax returns for the taxpayer corporation with the knowledge that taxes were being evaded.

Def.'s Ex. 1, App. to Def.'s Mot. for Summ. J. at A4.

### Procedural History

Plaintiff's complaint alleges that the IRS recovered additional tax from the third-party taxpayer as a direct result of the information plaintiff provided to the IRS. According to plaintiff's calculations, the information could have led to the recovery of at least $75 million. Therefore, plaintiff seeks payment of $6,975,000 as the maximum amount available under the reward provisions of the Agreement. Pursuant to the court's Pretrial Order, plaintiff was required to complete discovery and submit his pretrial submission on or before December 6, 2001. On November 30, 2001, plaintiff served on defendant's counsel requests for admission, interrogatories, and production of documents seeking access to the government's specific reasons for denying payment.[3] On December 6, 2001, the court received plaintiff's pretrial submission and motion for enlargement of time to receive responses to its discovery requests.

The matter is before the court on defendant's subsequent motion for summary judgment.[4] Defendant contends that no additional reward is due based on the provisions set forth in paragraph eight of the Agreement. The IRS, citing paragraph 7(c) of the Agreement and 26 I.R.C. § 6103, argues that plaintiff is not entitled to access to the agency's calculations regarding the amount of reward or the taxpayer's confidential tax informa-

tion. Furthermore, defendant submits that plaintiff breached the confidentiality provisions of the Agreement by revealing the identity of the target taxpayer in the complaint as well as in its submissions to the court.

### Discussion

#### Standard of Review

#### Jurisdiction

The jurisdiction of this court is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed.Cir.1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The Tucker Act, 28 U.S.C. § 1491(a), is merely jurisdictional and does not create a substantive right of recovery against the United States. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A claimant must base its suit on the Constitution, an Act of Congress, a regulation, or an express or implied contract with the United States. *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc).

26 I.R.C. § 7623 provides that the Secretary of the Treasury under "regulations prescribed the Secretary, is authorized to pay such sums, as he deems necessary for (1) detecting underpayments of tax . . . ." The regulations provide that a district director "may approve a reward, in a suitable amount, for information that leads to the detection of underpayments of tax, . . . ." 26 C.F.R. § 301.7623–1. The IRS has broad discretion to determine the amount of reward and its decision will be upheld so long as there was a rational basis. *Stack v. United States*, 25 Cl.Ct. 634, 637 (1992), *aff'd*, 983 F.2d 1088

---

**3.** Defendant did not receive plaintiff's requests until December 14, 2001 because of security screening conducted on all incoming correspondence.

**4.** On February 1, 2002, the court denied plaintiff's motion for enlargement of time pending resolution of defendant's motion for summary judgment.

(Fed.Cir.1992); *Saracena v. United States,* 206 Ct.Cl. 90, 95, 508 F.2d 1333, 1336 (1975). The Federal Circuit has held that United States "cannot be contractually bound merely by invoking the cited statute and regulations. An enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward." *Merrick v. United States,* 846 F.2d 725, 726 (Fed.Cir. 1988) (citing *Lagermeier v. United States,* 214 Ct.Cl. 758, 760, 1977 WL 25858 (1977); *Gordon v. United States,* 92 Ct.Cl. 499, 500, 36 F.Supp. 639, 640 (1941); *Briggs v. United States,* 15 Ct.Cl. 48, 50, 54, 1800 WL 1020 (1879)).

In this case, plaintiff entered into a written agreement with the IRS to provide information regarding underpayment of taxes in exchange for a reward payment. The Agreement obligated the IRS to pay 10% of any taxes collected as a result of the information provided by plaintiff unless any of the conditions are not met. Therefore, this court has jurisdiction over plaintiff's breach of contract claim that the IRS failed to make a proper payment under the reward provisions of the Agreement.

### Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted "if the dispute is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court must resolve all reasonable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. The burden on the moving party for summary judgment, to demonstrate that there is no genuine issue of material fact, may be discharged if it can show "that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987) (quoting *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548). The burden then shifts to the non-moving party to produce evidence setting forth specific facts that there is a genuine issue for trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "Mere denials, conclusory statements or evidence that is merely colorable or not significantly probative is not sufficient to preclude summary judgment." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 627 (Fed.Cir. 1984) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984)) (holding that nonmovant "must set out, usually in an affidavit from one with personal knowledge of specific facts, what specific evidence could be offered at trial."). Instead, to create "a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

### Informant's Reward

Plaintiff asserts that the IRS breached the terms of the Agreement by failing to provide an additional reward based on taxes allegedly recovered as a result of plaintiff's information. Although plaintiff has not presented any evidence demonstrating that the IRS actually recovered any taxes, he does speculate based on his calculations that the IRS could have recovered $75 million. Plaintiff contends that an accounting by the IRS will provide the amount of taxes recovered and that defendant must disclose the specific reasons for denying payment. Plaintiff, citing *Confidential Informant 92–95–932X v. United States,* 45 Fed.Cl. 556 (2000), argues that he is entitled to discovery of defendant's calculations regarding the amount of taxes recovered based on the agency's investigation.

In *Confidential Informant,* the court held that the taxpayer's confidential tax information could be disclosed to an informant pursuant to exceptions to the disclosure provisions of 26 I.R.C. § 6103. 26 I.R.C. § 6103(a) provides that the IRS cannot dis-

close tax returns or tax return information to the public in order to protect the taxpayer's confidentiality.[5] Section 6103(h) permits disclosure to certain federal officers for purposes of tax administration. The court granted the plaintiff's discovery requests under section 6103(h)(4)(B), which allows disclosure of tax return information in a judicial proceeding involving tax administration if "the treatment of an item reflected on such a return is directly related to the resolution of an issue in the proceeding." Additionally, the court approved discovery under section 6103(h)(2)(B), which permits disclosure of tax return information to employees of the Department of Justice involved in a proceeding before a federal court if "treatment of an item is or may be related to the resolution of an issue in the proceeding or investigation . . . ."[6]

However, defendant correctly argues that plaintiff's reliance on *Confidential Informant* is misplaced because the written agreement in that case did not contain any provision restricting the informant's access to the taxpayer's information. Therefore, the holding of that case is inapposite to plaintiff's claim. In *Jarvis v. United States*, 43 Fed.Cl. 529 (1999), the court considered facts similar to those presented in the instant case. In *Jarvis*, the plaintiff provided information to the IRS pursuant to a written informant agreement obligating the IRS to pay him a certain percentage of taxes recovered from the taxpayer. The agreement contained a similar provision stating that the IRS would not disclose to the informant the nature or amount of IRS adjustments or other tax information. The court acknowledged that the agency's calculations were no more than

a superficial explanation. However, the court held that:

> [I]t has a very limited role in evaluating plaintiff's argument. The plaintiff gave up, by contract, the right to see the calculations, and, under the agreement between the Taxpayers and the government, it was left to the agency as to how to make that allocation. The court's role, if any, is merely to ensure that the agency did not act in bad faith in making the allocation.

*Jarvis*, 43 Fed.Cl. at 533.

■ Thus, the plain language of the Agreement prohibits plaintiff's access to the calculations used by the IRS in determining the amount of plaintiff's reward and any other tax return information regarding any investigation of the taxpayer's liability. Pl.'s Ex. 1 at ¶ 7(c). The Agreement specifically informs plaintiff that the IRS will not disclose the taxpayer's tax information or any adjustments it may have made in evaluating plaintiff's possible reward. Furthermore, the Agreement contains eight possible reasons why no additional reward can be paid. The agency's refusal to disclose the specific reasons why no additional reward is due is consistent with the Agreement. Therefore, plaintiff's claim that he is entitled to review the agency's determination that no additional reward is due is clearly contrary to the disclosure provisions in the Agreement. The agency's decision that no additional payment is due may only be questioned if plaintiff can demonstrate that the IRS engaged in bad faith in reaching this decision. *Jarvis*, 43 Fed.Cl. at 533.

---

5.  26 I.R.C. § 6103(b)(2) defines the term "return information" to include:

    (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.
    (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110, . . . .

6.  It is important to note that section 6103(h)(2) "does not authorize the Justice Department employees to disclose this information in a judicial proceeding." *Heimark v. United States*, 14 Cl.Ct. 643, 647 (1988) (quoting *Estate of John Stein v. United States*, 81–1 USTC P13,405, 1981 WL 1807 (D.Neb.1981)).

■ The duty of good faith and fair dealing is implied in every government contract. *Centex Corp. v. United States,* 49 Fed.Cl. 691, 708 (2001). All government officials are presumed to act in good faith in the discharge of their duties. *Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed.Cir.1986). To satisfy the high burden of proof, plaintiff must present "well-nigh irrefragable proof" that the government acted in bad faith. *Torncello v. United States,* 231 Ct.Cl. 20, 47, 681 F.2d 756, 771 (1982). Plaintiff must demonstrate "facts constituting malice or, in other words, a specific intent to injure the plaintiff on the part of a government official." *Morris v. United States,* 33 Fed.Cl. 733, 752 (1995) (citing *Torncello,* 681 F.2d at 771; *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1302 (Ct.Cl.1976)).

■ Plaintiff asserts that the IRS acted in bad faith in its dealings with plaintiff by refusing to advise him of the status of the investigation and pay him under the terms of the Agreement.[7] The Agreement provides that an initial payment of $25,000 will be made once a decision is reached to pursue the allegations by initiating a criminal investigation or civil examination against the target taxpayer. Although plaintiff contends that an investigation began immediately after execution of the Agreement, plaintiff has failed to produce any specific evidence when an investigation was initiated or how long afterwards the IRS made the initial payment. Nor has he demonstrated how defendant's conduct was evidence of a specific intent to injure plaintiff.

According to the record, plaintiff's first written request for information is contained in a January 12, 1999 letter asking the IRS to "advise if an investigation, whether criminal or civil, as been initiated." Pl.'s Ex. 5. In a letter dated February 17, 1999, the IRS informed plaintiff that the information had been forwarded to its Manhattan District and that it had initiated a request to determine whether any money was due under the Agreement. Pl.'s Ex. 6. On March 26, 1999, plaintiff again inquired "whether an investi-

gation was commenced and whether any sums were collected." Pl.'s Ex. 7. On November 10, 1999, ten months after receiving plaintiff's first written request, the IRS informed plaintiff that a decision would be issued within 30 to 60 days. Pl.'s Ex. 10. On December 10, 1999, defendant paid plaintiff $25,000 pursuant to the provisions of the Agreement. As such, plaintiff's allegations of bad faith are merely conclusory and are clearly contradictory to the record.

Plaintiff's allegations that the IRS engaged in bad faith in its decision that no award is due is also without evidentiary support. Plaintiff has not established that any of the reasons asserted by the IRS for denying additional payment are erroneous or that it acted without a reasonable basis. Paragraph 7(c) of the Agreement specifies that the IRS will not disclose the nature of its adjustments concerning plaintiff's possible reward or the taxpayer's confidential tax information. Similar to the written agreement in the *Jarvis* case, plaintiff contractually gave up his right to see the agency's calculations. Plaintiff was also informed when he signed the Agreement that the IRS could deny payment of an additional reward for any of the reasons asserted in paragraph eight. The justifications set forth in defendant's August 29, 2001 letter reiterate the reasons listed under that provision of the Agreement. The Declaration of Jeaneen Heiskell also asserts that she reviewed plaintiff's claim and concluded that no additional reward was due under the reward provisions. Def.'s Ex. 1.

Plaintiff contends that even if he is not entitled to access to the agency's calculations, that there is still a genuine issue of material fact as to whether the IRS recovered taxes as a result of its investigation. However, an examination of plaintiff's assertions fails to produce any specific evidence sufficient to raise a genuine dispute. Plaintiff's affidavit asserts that based on the documentation provided to the IRS, he conservatively calculated that the additional tax liability of the taxpayer could have been approximately $75 million. However, this does not demonstrate how much the IRS actually recovered, if

---

7. Plaintiff's allegations that the IRS has acted in bad faith concerning other informants involved in the Informant Reward Program are irrelevant to the present case.

anything, but merely speculates based on his own calculations that the IRS might have recovered $75 million.

A claim that the IRS should have recovered more money as a result of its investigation is not enforceable under the Agreement. The Agreement does not impose any obligation upon the agency to maximize plaintiff's reward. Furthermore, "implying an obligation to make enforcement decisions in view of an informant's expectations would impermissibly involve the court in the internal affairs and judgments of an executive agency." *Jarvis,* 43 Fed.Cl. at 534. In *Lagermeier,* 214 Ct.Cl. at 758, a tax informant argued that the information he provided to the IRS could have led to the collection of over $3 million. The court responded:

> [W]e have no knowledge of how much the IRS actually recovered, if anything; rather, plaintiff supplicates us to measure the adequacy of his reward by what the court may find the IRS *should have recovered.* This is far too speculative and would involve the court in an unwarranted examination of the propriety of IRS investigations.

*Id.* at 761.

Plaintiff's next argument is that the taxpayer became a public corporation in 1996 and that any additional tax liability would have been disclosed to its shareholders. *See* Affidavit of Jack S. Conway, February 28, 2002, ¶ 12, Pl.'s Opp. to Def.'s Mot. for Summ. J. Assuming that the taxpayer did become a public corporation, there is no evidence beyond plaintiff's own allegations that the IRS could have recovered $75 million that suggest that the taxpayer was actually forced to pay additional taxes. However, the nonmovant "may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit from one with personal knowledge of specific facts, what specific evidence could be offered at trial." *Pure Gold, Inc.,* 739 F.2d at 627; *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 164 (Fed.Cir.1985) (holding that "mere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment.").

Plaintiff has not presented any documentary evidence, testimony from non-party witnesses, or affidavits from a party with personal knowledge to support his claim that any such disclosure of additional tax liability was made by the taxpayer. Summary judgment "need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." *Pure Gold, Inc.,* 739 F.2d at 627. Summary judgment may be granted against the nonmovant "where the evidence of record at the time of the motion supports its opponent on all key issues and the nonmovant fails to put in sufficient evidence to create a triable issue of any material fact." *Avia,* 853 F.2d at 1561. Based on the unsupported allegations that the IRS collected approximately $75 million as a result of its investigation, plaintiff has failed to demonstrate that there is a genuine dispute of material fact. In the absence of evidence of bad faith in the IRS action, plaintiff's recovery is limited to the amount calculated by the agency under the reward provisions of the Agreement.

### Conclusion

Assuming the truth of plaintiff's factual allegations, the complaint fails to raise a genuine issue of material fact precluding summary judgment. The Agreement prohibits plaintiff's access to the agency's calculations regarding the amount of taxes recovered or its possible reward. There is an absence of any evidence sufficient to raise a triable issue as to whether the IRS recovered additional taxes as a result of plaintiff's information. Plaintiff's allegations have failed to provide specific evidence of bad faith regarding the agency's decision. Because it is concluded that no basis for an additional reward under the reward provisions of the Agreement has been established, the court does not reach defendant's argument that plaintiff breached the agreement by disclosing the identity of the target taxpayer in its submissions.

Accordingly, it is **ORDERED** that:

(1) Defendant's Motion for Summary Judgment is **GRANTED**;

(2) Final Judgment shall be entered **DISMISSING** the Complaint, with **NO COSTS** assessed.